## MARTHA A. FROMMELT v. THE TRAVELERS INSURANCE COMPANY.[1]

September 30, 1921.

No. 22,174.

**Death by accident sustained by evidence.**
　　1. The evidence in this case is sufficient to sustain a finding that the death of the insured resulted from accidental means.

**Evidence not conclusive.**
　　2. The evidence is not conclusive that the death was due in part to pre-existing disease.

**Notice of death to insurer excused.**
　　3. The policy covering the case required that, in event of accidental death, immediate notice must be given to the company.　This means within a reasonable time.　Almost immediately after death the soliciting agent who negotiated the policy procured it and surrendered it to the company, as plaintiff claims without her authority.　It was never returned to her though later demanded.　*Held*, this and other circumstances in the case excused plaintiff from giving notice of death.

Action in the district court for Hennepin county to recover on an accident insurance policy.　The case was tried before Hale, J., who at the close of the evidence denied defendant's alternative motion for a directed verdict or dismissal, and a jury which returned a verdict for $8,237.50.　From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed.　Affirmed.

　　*Dille, Hoke, Krause & Faegre* and *L. N. Foster,* for appellant.

　　*J. H. Sapiro* and *Henry M. Farnam,* for respondent.

HALLAM, J.

This action was brought to recover on a policy of accident insurance issued to plaintiff's husband, Alfred Julius Frommelt.　Plaintiff had a verdict.　Defendant appeals.

[1]Reported in 184 N. W. 565.

1. The policy insured against loss resulting from "external, violent and accidental means." Defendant contends that the evidence fails to show that death resulted from such means. The short facts are as follows: About 1 a. m., January 16, 1918, deceased was, without premonition, taken sick at his home. He was suffering from a stricture of the urethra which prevented urination. Dr. Jones was called and arrived at 7 a. m. The evidence is in conflict, but there is competent evidence that, in passing a metal catheter through the urethra, Dr. Jones caused a severe lacertion. No relief was afforded. At 11 a. m. a trocar was passed into the bladder through an incision below the umbilicus and through this means the bladder was drained. At 3 p. m. another operation, styled the perineal operation, was performed. This consisted of an incision at the point of obstruction and the insertion of a drainage tube through the urethra into the bladder. Frommelt grew rapidly worse and died January 23.

The testimony for plaintiff consisted of her own testimony, giving the history of the case and the symptoms shown and the testimony of two doctors, Dewar and Quinby, who performed an autopsy five months later. The result of the autopsy was more fruitful than the layman would perhaps expect after the lapse of time. The two doctors gave the opinion that an infection set in in the urethra, worked up to the kidneys and caused death. If this infection was caused by the laceration from use of the catheter at 7 a. m. it may fairly be said to be the result of accident. If arising from one of the operations later in the day, it cannot be said to be accidental. Dr. Quinby gave the opinion that it was the result of the laceration. As basis in part for his opinion he indicated that it was probable from the symptoms and facts developed that infection set in very early, that there were indications that it had set in before the operation in the afternoon, and, the much greater probability of infection from a laceration caused by a catheter at a place within, where there had been no cleansing or sterilization, than by an operation with a knife in the hands of an experienced surgeon, and at a place where cleansing and sterilization were easy. We think the evidence sustains a finding of accidental death. See Lewis v. Ocean Accident & Guaranty Corp. 224 N. Y. 18, 120 N. E. 56, 7 A.L.R. 1129.

2. The policy covers only cases of loss through external, violent and accidental means "independently of all other causes," and by its terms excludes cases of death or other loss caused wholly or partly by bodily infirmity. Defendant contends that Dr. Dewar on the stand admitted that Frommelt's death was due partly to pre-existing disease, not to the stricture, but to a subacute nephritis. The court submitted this question to the jury in an instruction full and clear. The jury by their verdict decided this question adversely to defendant. We are of the opinion that their finding should not be disturbed. If Dr. Dewar's testimony contains the admission contended for, the admission of this one witness would not conclude plaintiff. But while some of Dr. Dewar's answers, at the close of a long cross-examination, contain this admission, when we take all his testimony together, while there is some confusion, we cannot be certain that Dr. Dewar intended an opinion that Frommelt had pre-existing nephritis. We are of the opinion that this question was properly submitted to the jury.

3. The policy requires that "in event of accidental death, immediate notice thereof must be given to the company." No formal notice was ever given to the company. The day after Frommelt died, Mr. Fust, the solicitor who solicited the policy, procured it from plaintiff and returned it to the company, and received from the company the unearned portion of the premium which he paid to plaintiff. His testimony is that he procured it and returned it in order to save that amount to plaintiff. Plaintiff's claim is that he obtained the policy without her knowledge, and, while admitting that he later handed her the money, said that it was while she was in the agony of grief over her husband's death and that she did not understand what it was for. On March 28, plaintiff's attorney demanded of Fust that he return the policy to plaintiff and Fust reported that fact to the company, but the policy was never returned.

The requirement of immediate notice is a requirement of notice within a reasonable time, and what is a reasonable time depends on the circumstances of the particular case. C. S. Brackett & Co. v. General A. F. & L. Assur. Corp. 140 Minn. 271, 167 N. W. 798. The fact that the policy was not in the possession of plaintiff but of the company is im-

portant, Curran v. National Life Ins. Co. 251 Pa. St. 420, 96 Atl. 1041; Solomon v. Continental Fire Ins. Co. 160 N. Y. 595, 55 N. E. 279, 46 L.R.A. 682, 73 Am. St. 707, for plaintiff could have no knowledge of its terms, and, without disparagement of her case, it may well be said that she probably did not realize at once that her husband's death was due to accident. Under such circumstances, we think the delay of plaintiff was excused.

After the demand for a return of the policy and the failure, tantamount to a refusal, to return it, we think the purpose of notice had been subserved and the failure to return the policy, implying the claim that it was no longer in force, absolved plaintiff of her obligation to further comply with its terms. Marcus v. National Council K. & L. of S. 127 Minn. 196, 149 N. W. 197; Dechter v. National Council K. & L. of S. 130 Minn. 329, 153 N. W. 742.

Order affirmed.