## STANDARD ACC. INS. CO. v. ROSSI.

Circuit Court of Appeals, Eighth Circuit.
November 4, 1929.

No. 8506.

668

Merritt U. Hayden, of Detroit, Mich. (Price Shofner, of Little Rock, Ark., on the brief), for appellant.

Ed. B. Dillon and S. S. Jefferies, both of Little Rock, Ark., for appellee.

Before KENYON and VAN VALKENBURGH, Circuit Judges.

VAN VALKENBURGH, Circuit Judge. This suit is brought by appellee as the widow of Joseph Rossi, deceased, who held an accident policy in appellant company. By this policy appellant insured the deceased against loss resulting from bodily injuries effected directly, exclusively, and independently of all other causes through accidental means. It is conceded that on the 20th day of February, 1927, the automobile of Joseph Rossi, in which he was riding, collided with another automobile, with the result that Mr. Rossi's car was overturned. No witness saw Mr. Rossi while in his car prior to the collision, and none of them saw him alight from the car. He was seen, however, standing on the walk or curb at or about the point where the accident occurred. The testimony tends to establish that Mr. Rossi was taken to his home, but was not continuously confined to bed, nor to the house, until March 5, 1927. In the meantime, he was driven down town, on at least three occasions, where he transacted some business, and attended police court in connection with a trial growing out of this same collision. On the latter date he took to his bed, where he remained until March 11th, on which day he died. The testimony produced by appellee, and embodied in a hypothetical question propounded to expert witnesses, was to the effect that two days before his death his color began to change to a dark blue, which continued, and that shortly before death his breathing became labored and he suffered a severe hemorrhage, in which there was expelled from his mouth a large quantity of bluish, lumpy, coagulated, and stringy blood. Before the accident, his complexion was ruddy, and his general physical appearance was that of health. The testimony of plaintiff's experts was to the effect that death was occasioned by thrombosis or embolus, resulting from trauma. As one witness put it:

"* * * It is quite possible that the injury that he had, appearing to be struck over the liver, that that may have produced a blood clot, which got into the circulation and a piece of that blood clot was washed off and got into the portal circulation, I mean the circulation of the lungs, and dammed up the blood so, a spot in the lungs, and as a result of that he had this typical black blood hemorrhage from his mouth and accompanying symptoms. I would say that was the most probable explanation of his death."

It is conceded that some years prior to the accident Mr. Rossi had had what one of the expert witnesses for plaintiff describes "as an extensive tubercular process." He says:

"If you ask me if the lung was diseased, that was perfectly obvious.

"Q. There was danger that the disease might become active at any time? A. It might be. The old tuberculosis is always liable to become active. But a man don't die from re-inactivated tuberculosis in nineteen days. He dies in several months or several years. There is a slow process unless he dies with an acute hemorrhage, which he did."

X-ray pictures taken in November, 1926, disclosed these lesions—then apparently healed. There was a great deal of scar tissue scattered throughout the lungs, indicating that he had had a very extensive involvement of those organs. It was the contention of appellant that death was caused by this tubercular condition, aggravated and excited into renewed activity perhaps by the accident, but nevertheless the primary cause of death. In support of this contention it introduced the certificate of death, filed by the attending physician, which contained the following:

"The cause of death was as follows: Pulmonary Tuberculosis made active by accident (Car) (duration) 4 yrs. Contributory Car Accident (Secondary)."

Again, the same physician in his initial report, submitted to appellant on February 25,

1927, stated that the accident occurred because "car in which patient was riding was struck by another car and turned over." In reply to the question, "Give an accurate and complete description of the nature and extent of the injury," he replied:

"Contusion and brush burn of forehead. Contusion and sprain of right lumbar and lower chest region. Wound on right leg. Bruise on left thigh."

He also stated in answer to inquiry of whether there was any history or evidence present of pre-existing injury or disease, that deceased "had tuberculosis of right lung." He further stated that the injured person would be able to resume his usual work in three weeks, or perhaps four. Medical witnesses introduced by appellant testified that from what was brought out in evidence they could not say definitely what was the cause of death, but that from the symptoms detailed the death could have been caused either by the accident, or by something not at all related to it, to wit, tuberculosis. It was further their opinion that, if death was caused by embolus, as stated by witnesses for appellee, then an autopsy would have disclosed that fact. This view is thus expressed by Dr. Ogden, witness for appellant:

"An embolus which is a blood clot floating in the blood vessel, stops up the blood vessel in the lung, of sufficient size to cause the patient to be blue and to cause death would leave this area of the lung perfectly recognizable at an autopsy, even though the embolus itself was not there, even though the embolus had been destroyed in the process of embalming, but the area of the lung involved by the embolus would still be recognizable."

On April 8, 1927, appellant served upon appellee a request, in writing, for autopsy upon the body of Rossi, so that the cause of death might be determined. To this request appellee apparently at first consented upon advice of counsel, but a day or two later the demand was refused. The insurance contract provides that:

"The Company shall have the right and opportunity to examine the person of the insured when and so often as it may reasonably require during the pendency of claim hereunder, and also the right and opportunity to make an autopsy in case of death where it is not forbidden by law."

Witnesses for appellee deny that an autopsy would probably disclose the cause of death, and counsel for appellee contend that the Statutes of Arkansas forbid the holding of an autopsy, at least without the consent of the widow, and that, in any event, the request came too late. The funeral was held, and deceased was placed in a receiving vault, on March 14, 1927. Apparently the first notice that appellant had of the death was on March 25, 1927, when the Union Trust Company, of Little Rock, acting for appellee, asked for blanks for making proof of a death claim under the policy. It will be remembered that the first report of the accident, made by the physician in charge, indicated that the injury was not of a serious character. The demand for autopsy was made within approximately two weeks after the application for blanks for making proof, and four weeks after the death. The Arkansas statute in question is section 2723 of Crawford & Moses' Digest, 1921, to wit:

"*Removal Of Body From Grave.* Every person who shall remove the dead body of any human being from the grave or other place of interment, for the purpose of stealing the same, or for the purpose of dissection, or from mere wantonness, shall be deemed guilty of a misdemeanor."

The court held that the request for autopsy was not made within a reasonable time, and so instructed. Upon submission, the jury returned a verdict for appellee. In addition to the principal sum named in the policy, the court assessed damages, for failure to pay after demand made, in the sum of $900, and attorneys' fees in the further sum of $750. This action was taken under section 6155, Crawford & Moses' Digest, 1921, which provides:

"*Penalties and Attorneys' Fees.* In all cases where loss occurs, and the fire, life, health, or accident insurance company liable therefor shall fail to pay the same within the time specified in the policy, after demand made therefor, such company shall be liable to pay the holder of such policy, in addition to the amount of such loss, twelve per cent. damages upon the amount of such loss, together with all reasonable attorneys' fees for the prosecution and collection of said loss; said attorneys' fees to be taxed by the court where the same is heard on original action, by appeal or otherwise and to be taxed up as a part of the costs therein and collected as other costs are or may be by law collected."

The contentions of appellant are as follows:

"(1) That there was not sufficient competent evidence warranting the submission to the jury of the question whether, in accordance with the provisions of the insuring clause of the policy sued on, the death of Joseph Rossi resulted "from bodily injuries effected directly, exclusively and independently of all other causes through accidental means.

"(2) That there is a failure of evidence of compliance, by appellee, with the policy obligation to give proof of loss, or of any waiver of that provision of the policy by appellant.

"(3) That the undisputed evidence established that a seasonable demand for an autopsy upon the body of Joseph Rossi was made by appellant upon appellee, to the end that the cause of death might be determined and that such autopsy was ultimately refused by appellee, for which reason she was not entitled to recover under the policy and for which reason the Court should have directed a verdict in favor of appellant.

"(4) That the testimony of witnesses, other than appellee, with respect to exclamations of pain by Rossi following the collision was of such a character, both as to lack of materiality and as to not being a part of the res gestæ, that same should not have been admitted and the jury permitted to consider it.

"(5) That the testimony of appellee, with respect to statements of pain by Rossi, several days after the collision, was inadmissible because privileged and because not a part of res gestæ.

"(6) That if, under all the circumstances established by the evidence, the question of whether the demand for the autopsy was made by appellant within a reasonable time after the death of Joseph Rossi was involved in the case at all, that question was one of fact to be submitted to the jury under proper instructions of the Court, and not one of law to be determined by the Court, and that the Court, therefore, erred in charging the jury, as a matter of law, that the demand for the autopsy had not been made within a reasonable time after Rossi's death.

"(7) That the Court erred with respect to the instructions given to the jury and with respect to failure to charge as requested by appellant.

"(8) That appellee failed to prove sufficient facts to warrant the assessment of penalty and attorney's fee under the Arkansas statute."

■ 1. In addition to what has been recited in the foregoing statement of facts, the record discloses sufficient evidence tending to establish an independent accidental cause of death, to warrant submission to a jury. The testimony was, of course, conflicting, but no useful purpose could be subserved by further analysis in this opinion.

■ 2. It is true that no formal proofs of loss of the nature prescribed by the policy were submitted to appellant. It is also true, as stated by counsel for appellant, that provisions in accident policies for the giving of notice and proofs of death are valid and enforceable, and, unless waived, are conditions to recovery on the policy. But we think there was a waiver of the provision requiring written proofs within a specified time, in the form of an admission that such proofs were furnished. In appellant's answer the following appears:

"Further answering, the defendant states that, within a reasonable time after notice and proof of death were furnished to it, a demand was made upon the plaintiff, Emma Rossi, that the defendant be allowed to perform an autopsy upon the body of Joseph Rossi under the terms of the policy in order that the cause of death might be ascertained."

The burden of the defense interposed by the answer was that the insured did not die as the result of bodily injury effected directly, exclusively and independently of all other causes by the alleged automobile collision, and that defendant had been denied opportunity to establish that fact by means of autopsy. The giving of notice and proofs was affirmatively assumed in the pleading. The case was tried on that theory, and in the face of this state of the record appellant cannot now be heard to assert such alleged default on the part of appellee.

■ 4. An injury to the insured of some character, through an automobile collision, was abundantly proved, and but formally contested. Exclamations of pain made by Mr. Rossi immediately after the accident, as testified by witnesses for appellee, were obviously a part of the res gestæ, and therefore admissible.

■ 5. The testimony of the wife with respect to statements of Rossi as to pain suffered, made several days after the accident, was incompetent under the laws of Arkansas (section 4146, Crawford & Moses' Digest of 1921), and should not have been admitted. However, it was merely cumulative in nature, and served only to confirm what was already abundantly proved and practically conceded. Under the record before us, no prejudice resulted, and no reversible error was committed.

■ 3, 6, and 7. We come now to the more serious of the errors assigned.

It is well established that, in the absence of express statutory prohibition, the employment of autopsy to discover the cause of death, in both criminal and civil cases, is a recognized and legitimate proceeding, and that a provision in an accident policy of the character before us is a valid and enforceable provision of the contract. Failure to accede to a demand therefor, when seasonably and reasonably made, is a breach of the policy contract. Appellee claims that the law of

Arkansas prohibits autopsies, at least in the absence of consent. The statute relied upon has already been quoted. It occurs in Crawford & Moses' Digest under the heading "Cemeteries; Violation of Graves." The two sections immediately following section 2723 shed light upon the meaning and purpose of this legislation:

"§ 2724. *Purchasing Body*. Every person who shall purchase or receive the dead body of any human being, knowing the same to have been disinterred contrary to law, shall be deemed guilty of a misdemeanor.

"§ 2725. *Opening Grave*. Every person who shall open a grave or other place of interment, with the intent to remove the dead body of any human being for the purpose of selling the same, or for the purpose of stealing the coffin, or any part thereof, or the vestments or other articles interred with any dead body, shall be deemed guilty of a misdemeanor."

It is undisputed that appellant sought disinterment neither for the purpose of stealing the body nor from mere wantonness. Appellee apparently objected to the autopsy on the ground that it involved dissection, and it is insisted that the Arkansas statute forbids the removal of the body for the purpose of dissection. Clearly this is a perversion of the plain intendment of the language used. The legislative prohibition was addressed to the unlawful practices obtaining in times past, before modern methods of burial prevailed whereby comparative security is attained. Bodies were exhumed, removed, and sold for dissection for scientific purposes. The desecration of graves was made the subject of commercial traffic, and it is against this practice that this law was aimed. It had no reference to post mortem examinations for the purpose of detecting the commission of crime or of fraud or injustice in civil proceedings. We do not find that the contract right to autopsy is within the prohibition of the Arkansas statute.

A second ground of objection to autopsy in this case is the contention that it would necessarily have been ineffective to disclose the cause of death. We do not think the record supports this contention. The details of the embalming are given. On March 14, 1927, the body was enclosed in a sealed casket, and was placed in a mausoleum, above ground, where it remained for a period of nine months. The demand for autopsy was made April 8, 1927. Dr. Bledsoe, a witness for appellee, testified as follows:

"Q. If this death was caused from embolism, do you say that an autopsy would have disclosed any rupture, or I believe you Doctor, call it an infarct.

"Q. Infarct simply means a portion of the lungs that is dammed off by an embolus. A. Now, I simply said that after a man has been embalmed and has been dead for the length of time that this man was dead, that the chances were that an autopsy wouldn't have shown the minute pathology that was shown by an embolus and the chances are in the process of embalming if it was clogged up it would be washed out by the embalming fluid.

"Q. Aren't there also chances that it might be there? A. I am merely speculating.

"Q. If the embalming of the body did destroy evidence of minute pathology of embolus would it still not be true, that the infarct would be recognizable by an autopsy? A. It might be if an infarct existed. An infarct might be a very large thing.

"Q. Doesn't an infarct, in other words, a portion of the lungs dammed off, always result from embolus? A. It usually does.

"Q. If this man had died from embolus wouldn't it have disclosed whether or not there was an infarct? A. It would depend upon the size of the infarct. If it was a gross thing, that involved a portion of the lung as big as my hand, it is possible it would have shown it."

A part of the testimony of Dr. Ogden, for the defense upon this point has been quoted above. The following is to be added:

"Q. I will ask you first what experience if any you have had in the autopsy? A. I taught pathology, or was Professor of Pathology for several years, was Coroner's Physician here in Little Rock for eight years, and of course, about the number I have done, I don't know.

"Q. Probably hundreds or more? A. Oh, yes.

"Q. In your handling of autopsies have you performed autopsies and been present and witnessed autopsies on bodies that had been embalmed for a period of one month or more? A. Yes, sir.

"Q. Numbers of cases? A. Yes, several, just how many I don't know, but several cases.

"Q. You are familiar from the testimony of Mr. Woolery here and from your knowledge of embalming, you are familiar with the effect of the embalming fluid on the human body. A. Yes.

"Q. Now, testifying from what he said as to the embalming of Mr. Rossi's body and the testimony here which you have heard as to the injury of Mr. Rossi and his death, would

it in your opinion have been any benefit in finding out the probable cause of Mr. Rossi's death to have had an autopsy shortly after the 8th of April, he having died the 11th of March, and the body having been embalmed that day? A. I think it is highly probable that the cause of death could have been determined, by an autopsy at that time following that method of embalming and with the body preserved in a sealed casket.

"Q. You have performed autopsies on bodies that had been embalmed for that length of time or more? A. Yes."

Dr. Cull, another defense witness, has this to say:

"Q. From the testimony here and the kind of embalming that was done, would you say that thirty days or a short time after thirty days after this time the body was embalmed, would it have been in such condition from the embalming as to have disclosed by the autopsy, probably disclosed, something that would have thrown light on the cause of his death? A. I think it probably would, not necessarily, but I think it would, probably would. Certainly, if it is a question of embolism or tuberculosis I think a very high degree of probability that it would."

■ From the foregoing it appears that there was substantial evidence to the effect that an autopsy might very probably have disclosed the cause of death, and that the condition of the body at the time the demand was made would not necessarily, nor even probably, have prevented such disclosure. We conclude, therefore, that the issue of whether the request was reasonably and seasonably made was sharply presented. If so made, the refusal to grant it was such a breach of the insurance contract as would preclude recovery by appellee. The following rules announced by the Supreme Court of Wisconsin in Cretney v. Woodmen Accident Company, 196 Wis. 29, 219 N. W. 448, 449, we think fairly govern the question of whether an accident policy of this nature applies in a given case:

"(1) When an accident causes a diseased condition, which, together with the accident, results in injury or death complained of, the accident alone is to be considered as the cause of the injury or death. * * *

"(2) When, at the time of the accident, the insured was suffering from some disease, but the disease had no causal connection with the injury or death resulting from the accident, the accident is to be considered the sole cause. * * *

"(3) When, at the time of the accident, there was an existing disease, which, co-operating with the accident, resulted in the injury or death, the accident cannot be considered as the sole cause or as the cause independent of all other causes."

■ Counsel for appellant asked a number of instructions based upon these rules. One was given, and the balance refused. In our judgment, the charge of the court was sufficiently comprehensive in this respect, and placed the issue clearly before the jury. The remainder of the requests concerned the refusal of appellee to permit the autopsy demanded. We select number seventeen as typical and sufficient for this discussion:

"The fact, if you find such to be a fact, from the evidence in the case, that the plaintiff at one time gave her permission that an autopsy be performed and later withdrew permission and refused to allow an autopsy is to be considered by you along with all the other facts and circumstances disclosed by the testimony in deciding whether or not the demand for an autopsy was made within a reasonable time."

This request was refused, and the court charged as follows:

"The court instructs you that under the facts proved here that request was not made within a reasonable time, so you have nothing to do with whether she properly refused that or not. The Court instructs you that under the facts the request was not made within a reasonable time."

While no specific exception was taken to this feature of the charge, exceptions were asked and allowed as to the refusal of instructions requested. The matter is therefore preserved and presented, and we think reversible error is disclosed. The question of whether the request for autopsy was reasonably and seasonably made was a matter for determination by the jury under the record before us.

■■ 8. In view of the fact that the case must be tried again, we think some remarks upon the imposition of penalties and attorney's fees, under section 6155, supra, of the Arkansas Digest, are pertinent. It is true that the language of the statute, strictly construed, imposes these penalties in all cases where the company fails to pay within the time specified in the policy, after demand made therefor. However, the rigor of this language has been somewhat relaxed by the Supreme Court of Arkansas in Pacific Mutual Life Insurance Co. v. Carter, 92 Ark. 378, 123 S. W. 384, 388, 124 S. W. 764. On page 378 it is said:

"A recovery, for penalty and attorney's fee, cannot be had when complainant makes demand for more than he is entitled to recover. It could never have been the purpose of

the Legislature to make the insurance companies pay a penalty and attorney's fee for contesting a claim that they did not owe. Such an act would be unconstitutional. The companies have the right to resist the payment of a demand that they do not owe."

In the absence of any decision of the Arkansas court of last resort to the contrary, and none has been cited, we are of the opinion that the statute in question should not be construed to demand the imposition of its penalties where the refusal to pay without suit is based upon an honest and fairly debatable difference of opinion as to the law involved; and that the application of its provisions should be confined to cases of vexatious and inexcusable neglect and failure to respond to contract obligations, as is the rule in other jurisdictions. Commercial Casualty Insurance Co. v. Fruin-Colnon Cont. Co. (C. C. A. 8) 32 F.(2d) 425, 428, 429. Furthermore, the constitutionality of a law which imposes such conditions upon the right to appeal for judicial relief as works, or tends to work, an abandonment of the right, rather than face the conditions upon which it is offered, or may be obtained, is questionable at least. Ex parte Young, 209 U. S. 123, 146, 28 S. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932, 14 Ann. Cas. 764.

"It is a denial of due process of law if such review can be effected by appeal to the courts only at the risk of having to pay penalties so great that it is better to yield to orders of uncertain legality than to ask the protection of the law. Ex parte Young, 209 U. S. 123 [28 S. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932, 14 Ann. Cas. 764]." Wadley Southern Ry. Co. v. Georgia, 235 U. S. 651, 652, 35 S. Ct. 214, 59 L. Ed. 405.

We think the facts in this case justified an appeal to the court for judicial determination. It follows from what has been said that the judgment must be reversed and the case remanded for a new trial in accordance with the views herein expressed. It is so ordered.