**CLAY v. ÆTNA LIFE INS. CO.**

District Court, D. Minnesota, Second Division.
Nov. 12, 1931.

Daly & Barnard, of Renville, Minn., and A. E. Kief, of Montevideo, Minn., for plaintiff.

Cobb, Hoke, Benson, Krause & Faegre and J. G. Stirn, all of Minneapolis, Minn., for defendant.

SANBORN, District Judge.

This cause came on to be tried before the court and a jury on the 22d day of October, 1929, at a general term of this court held in Minneapolis, Minn.

The jury returned a special verdict on certain issues, and thereafter briefs were submitted by counsel with respect to other issues, and the case was finally submitted in July, 1931.

Charles F. Clay, the husband of the plaintiff, died on January 22, 1929. He was insured against death by accident by the defendant under a policy issued on September 29, 1922, and renewed each year thereafter by the payment of the stipulated premium. Subject to the conditions and limitations contained in the policy, it provided for the payment to the plaintiff of $10,000 if her husband met his death directly and independently of all other causes through accidental means within ninety days from the date of the accident. In the certificate of death given by Mr. Clay's attending physician, the cause of death was stated to be apoplexy. He died almost instantly in the garage of which he was the proprietor, just as he had finished pushing an autotruck upon the elevator. His body was embalmed and was buried on January 25, 1929. Mrs. Clay did not discover the accident policy until February 4, 1929. She then took it to her attorney. He immediately notified the company that the death was claimed to be due to an accident, and requested the necessary blank proofs of death. This letter was received at the home office of the company on February 7, 1929. The company, in reply, on February 8th wrote that the letter had been referred to the adjusting office in Minneapolis with instructions to give the matter such attention as it required. On February 25, 1929, an adjuster for the company served on Mrs. Clay a demand for an autopsy. She did not give her consent. On March 5, 1929, Mr. Stirn, the attorney for the company at Minneapolis, wrote Mrs. Clay asking for her decision with respect to the company's demand for an autopsy. She received the letter on March 6th, but made no answer to it. No autopsy was had. The company denied liability on March 22, 1929, reciting the failure of Mrs. Clay to consent to an autopsy.

Mr. Clay, at the time of the issuance of the policy, was a hotel keeper and was so classified. Some years before his death, he changed his occupation to that of a garage keeper, an occupation which was classed as more hazardous than his former occupation.

Mrs. Clay brought this suit claiming that the death of her husband resulted from an accident. This the company denied. It set up as additional defenses the refusal by Mrs. Clay of its demand for an autopsy and the change of occupation of Mr. Clay.

Upon the trial, it developed that Mrs. Clay claimed that, while Mr. Clay was pushing the autotruck in the garage, immediately before his death, he slipped on the floor of the garage, and that this slipping caused a cerebral hemorrhage and was the sole cause of his death. It also appeared that the defendant claimed that Mr. Clay's death was due, in whole or in part, to disease either of the arteries of the brain or the coronary artery leading to the heart. It was agreed that, if the evidence made an issue for the jury as to whether the accident was the sole cause of death, it should be submitted to the jury, and that all other questions should be decided by the court. The jury was asked to determine two questions: "Did Mr. Clay, the deceased, while pushing the service truck, slip as claimed by the plaintiff? If you answer the first question in the affirmative, did the slipping, solely and independently of any disease or infirmity, directly cause his death?" Both of these questions were answered by the jury in the affirmative.

The question of the sufficiency of the evidence to justify the verdict of the jury is a close one, but I think the questions asked were questions of fact for its determination, rather than questions of law to be determined by the court. Therefore it must be assumed by me in deciding the other questions involved in this case that Charles F. Clay came to his death as the result of an accident solely and independently of any disease or infirmity, and that the plaintiff is entitled to recover whatever amount the policy called for at the time of his death, unless some breach of the contract has relieved the company of its liability.

The policy contained the "standard provisions" required by the laws of the state to be inserted in accident policies. Section 3417, Mason's Minn. Statutes 1927. Among them was a provision that, in the event of accidental death, immediate notice thereof must be given to the company, a provision that the company should have the right and opportunity to make an autopsy in case of death, where not forbidden by law, and a provision that, in case the insured should change his occupation to one classified by the company as more hazardous than that stated in the policy, the company would pay only such portion of the indemnity provided in the policy as the premium paid would have purchased at the rate but within the limits fixed by the company for more hazardous occupations as shown by the classification on file with the state official having supervision of insurance.

The following questions, then, are presented: (1) Did the plaintiff fail to give immediate notice as provided for in the

contract? (2) Did the refusal to permit an autopsy constitute a breach of the contract? (3) Assuming that the plaintiff has a right to recover, what amount is due under the terms of the policy?

Since the provision requiring immediate notice is one which is required by the laws of the state, and since the policy is a Minnesota contract, I am of the opinion that the construction placed upon that provision by the Supreme Court of the state of Minnesota is binding upon this court. The Supreme Court of the state has decided that immediate notice means reasonable notice. See Dunnell's Minnesota Digest, vol. 3, page 862; Frommelt v. Travelers' Ins. Co., 150 Minn. 66, 184 N. W. 565; Brackett & Co. v. General A., F. & L. Assur. Corp., 140 Minn. 271, 167 N. W. 798. This holding seems to be in accordance with the weight of authority. In 1 C. J. 476, appears the following statement: "Where the existence of the policy was unknown to the beneficiary, a notice forwarded by him as soon as he discovered the existence thereof is sufficient within the provision requiring notice immediately or as soon as possible after the injury or death"—citing Provident L. Ins., etc., Co. v. Baum, 29 Ind. 236; Konrad v. Union Casualty, etc., Co., 49 La. Ann. 636, 21 So. 721; American Acc. Co. v. Card, 13 Ohio Cir. Ct. R. 154, 7 O. C. D. 504; Cady v. Fidelity, etc., Co., 134 Wis. 322, 113 N. W. 967, 17 L. R. A. (N. S.) 260.

I therefore find that the plaintiff gave immediate notice as required by the terms of the policy.

The excuses given by Mrs. Clay for her refusal to consent to an autopsy are: That the demand in this case was neither made within a reasonable time nor in a suitable way, because it was made one month after burial; that the defendant had the power, if it deemed it necessary, to apply to the court for an order requiring an autopsy; that the agents of the company who had collected premiums upon the policy knew of the death of the deceased immediately upon its occurrence; that the adjusters who called on Mrs. Clay and presented the demand for an autopsy were neither of them physicians; that they learned at the time of the demand that Mr. Clay had been buried for practically a month; that it ought to be assumed that the company was well satisfied not to have an autopsy, and that the demand was made in the hope and expectation that the plaintiff would not consent, so that her refusal might be interposed as a defense; that it should

also be assumed that no widow would consent to having the body of her husband disinterred after it had been buried for a month and permit its mutilation for the purpose of having determined the cause of death; that the defendant has not been damaged by the refusal "(1st) because it had the power on a proper showing to a court of competent jurisdiction to compel it; and (2d) that the plaintiff's expert witnesses testify that it would be 'improbable, if not impossible,'" that an autopsy would show "whether or not there was hardening of the arteries either of the brain or coronary artery."

The validity of the provision in the policy permitting an autopsy is not in dispute. The company had a right to an autopsy if a demand therefor was reasonably and seasonably made. That is clearly established in two recent cases in the Court of Appeals of the Eighth Circuit. General Acc. Fire & Life Assur. Corp. v. Savage, 35 F.(2d) 587, and Standard Acc. Ins. Co. v. Rossi, 35 F.(2d) 667. In those two cases it was held that the question of whether the demand was made within a reasonable time was for the jury. In the latter case, the court said [page 670 of 35 F.(2d)]: "It is well established that, in the absence of express statutory prohibition, the employment of autopsy to discover the cause of death, in both criminal and civil cases, is a recognized and legitimate proceeding, and that a provision in an accident policy of the character before us is a valid and enforceable provision of the contract. Failure to accede to a demand therefor, when seasonably and reasonably made, is a breach of the policy contract."

In that case, as here, the demand for the autopsy took place after interment. The trial court held that, under the evidence, the demand for an autopsy came too late, since it appeared that the demand was made within approximately two weeks after the application for blanks for making proof, and four weeks after the death. The appellate court held that the question as to whether the demand was reasonable should have been submitted to the jury, and reversed the case for that reason. The question as to whether the trial court should have instructed a verdict for the insurer in that case on the ground that it conclusively appeared that the demand was reasonable, was apparently not raised. Since the decision, the case has been retried in accordance with the opinion, and a judgment for the plaintiff affirmed. (C. C. A.) 52 F.(2d) 547. It appears that on neither ap-

peal was the question as to whether the demand for an autopsy was reasonably made as a matter of law squarely presented.

The only Minnesota case with reference to this provision which has been cited or which I have been able to find is that of Johnson v. Bankers' Mut. Casualty Ins. Co., 129 Minn. 18, 151 N. W. 413, L. R. A. 1915D, 1199, Ann. Cas. 1916A, 154. There the demand for an autopsy was made upon the widow a few hours before the funeral and at a time when friends were beginning to arrive from a distance and the body was being prepared for burial. The demand was a present demand calling for present compliance or refusal. The court said (page 21 of 129 Minn., 151 N. W. 413, 414): "Plaintiff does not question the validity of this provision in the policy which gave defendant a right to demand an autopsy, and if the demand for an autopsy was properly made, its refusal defeats any right of action on the policy. The question is as to the sufficiency of the demand." The court properly held that the demand was not made at a suitable time or under suitable circumstances, and, for that reason, its refusal did not defeat the plaintiff's claim.

In Whitehouse v. Travelers' Ins. Co., Fed. Cas. No. 17,566, the court said: The necessity of the provision in accident policies that insurer shall have the right to make an autopsy can be seen "where a man might die and be buried, and it be alleged afterward that the death was caused by accident, whereas, if an autopsy had been made, it might have been shown otherwise." See note to Johnson v. Bankers' Mut. Casualty Ins. Co., L. R. A. 1915D, 1200.

■■ In this case, interment had taken place about twelve days before the company was notified that any claim was being made that the death of Mr. Clay was accidental. While the agents of the defendant who had collected the premiums knew of the death of Mr. Clay, there is nothing to show that they knew that it was claimed to have occurred through accidental means. Therefore the first knowledge that the company had of that claim was after the body had been embalmed and after it had been interred. If the company had made its demand on the 10th day of February, instead of the 25th day of February, no one could claim that it was not made within a reasonable time. It was actually made within less than twenty days after the company had received its first notice. So far as the mere lapse of time is concerned, there is nothing to indicate that any greater distress would have been occasioned to Mrs.

Clay or the family of the deceased by the disinterment of the body on February 25th or March 6th than would have been occasioned by its disinterment on February 10th. It is the duty of an insurance company to use due diligence in making the demand for an autopsy if one is desired, and the demand should be made before the interment of the body, if that can reasonably be done. It has been properly held that, where an ample opportunity existed prior to interment, the company cannot be heard to say that a demand made after interment was reasonable. However, in this case the body had already been interred before Mrs. Clay ever discovered that there was an accident policy, and before the company knew of the claim of accidental death. The public policy of permitting disinterment under such circumstances cannot be questioned, since the laws of Minnesota not only permit, but require, the provision for an autopsy, which is unconditional except for the requirement the courts have imposed, that the demand be reasonably and seasonably made.

■ The plaintiff's experts testified that, due to the embalming fluid, they did not believe that an autopsy would have disclosed whether the arteries of the brain or heart were diseased. The physicians who testified for the defendant expressed contrary views. Apoplexy results from a cerebral hemorrhage. There is testimony to indicate that an occlusion of the coronary arteries may cause death in the same way and with the same symptoms as a cerebral hemorrhage. It would seem reasonable to suppose that an autopsy would have disclosed whether Mr. Clay died from a rupture of an artery in the brain or an occlusion of a coronary artery, and that any unusual hardening of the arteries of either the brain or the heart would have been ascertainable in spite of any changes caused to the blood vessels by the embalming fluid. It is possible, of course, that the company did not in good faith make this demand for an autopsy. There is, however, nothing in the evidence to establish that fact. That the physician who was to perform the post mortem examination did not accompany the demand is of no importance. Before the autopsy could be performed, Mrs. Clay must consent. If Mrs. Clay or her counsel felt that the demand was not in good faith, the easiest way to have ascertained that would have been to have consented to the autopsy. Mrs. Clay was in this position: If the demand was reasonably and seasonably made, she must either consent to the autopsy or abandon her rights

under this policy. Without her consent, the company could not disinter the body and perform an autopsy. Section 10227, Mason's Minn. Statutes 1927.

■ "The demand was made upon the proper person. The widow of deceased was the sole beneficiary under the policy and she had control of the body of deceased. Larson v. Chase, 47 Minn. 307, 50 N. W. 238, 14 L. R. A. 85, 28 Am. St. Rep. 370; Lindh v. Great Northern Ry. Co., 99 Minn. 408, 109 N. W. 823, 7 L. R. A. (N. S.) 1018. She alone had the right to say whether or not an autopsy should be held. It was proper that the demand be addressed to her." Johnson v. Bankers' Mut. Casualty Ins. Co., supra, 129 Minn. 18, 21, 151 N. W. 413, 414, L. R. A. 1915D, 1199, Ann. Cas. 1916A, 154.

The case of Employers' Liability Assur. Corporation v. Dean, 44 F.(2d) 524 (5th C. C. A.), would appear on first reading to be opposed to the views expressed, but in that case the court was of the opinion that no need for an autopsy was shown, that an autopsy could have been held without the consent of the widow, and the nature of the demand was said to be unreasonable.

■ I am unable to convince myself that in this case the demand for an autopsy on the 25th day of February was made at an unreasonable time or under unsuitable circumstances. I therefore find that the demand for an autopsy was reasonably made, and that the failure of the widow to consent to it constituted a breach of the contract, and defeats her right of recovery. In view of that finding, there is no necessity of attempting to determine what amount would be due Mrs. Clay if the company were liable. My conclusion is that the defendant is entitled to judgment of dismissal and for its costs and disbursements.

■ At the close of the evidence in this case, there appeared to be no substantial dispute as to the facts and circumstances under which the demand for an autopsy was made, except for a difference of opinion among the experts as to whether an autopsy would have disclosed anything as to the cause of death. I believe that counsel were—and I know that the court was—of the opinion that the question of the effect of Mrs. Clay's refusal to consent to an autopsy under the circumstances disclosed by the evidence was a question of law for the court, rather than a question of fact for the jury. I am holding that it is a question of law, and determining it as such. However, if upon an appeal it shall be held to be a question of fact, in order to save the rights of the plaintiff on appeal to a review of the evidence

upon which the finding is based, let it be understood that the plaintiff has moved the court for judgment in her favor on the sole ground that the evidence will support no other conclusion, and that she has an exception to the denial of that motion. While I do not recall that the motion was made at the close of the testimony, the plaintiff has distinctly called to my attention by her briefs and arguments that she claims that the only judgment that can be rendered in this case is one in her favor, and I have proceeded upon the assumption that the record shows that such a motion was made.

Let judgment be entered in favor of the defendant dismissing this action and for its costs and disbursements.