## HOWES v. UNITED STATES FIDELITY & GUARANTY CO.

### No. 7410.

Circuit Court of Appeals, Ninth Circuit.

Nov. 15, 1934.

Williams & Williams and Jas. A. Williams, all of Spokane, Wash., for appellant.

Danson, Lowe & Danson, of Spokane, Wash., for appellee.

Before WILBUR, SAWTELLE, and GARRECHT, Circuit Judges.

SAWTELLE, Circuit Judge.

Some years prior to this controversy, defendant-appellee issued a policy of accident insurance on the life of one Alice Howes, now deceased. The said deceased was found dead on the morning of October 20, 1932, in the bathroom of her home, with her body lying over the side of the bathtub; "the lower part of her body being outside of the tub and her hands and a portion of her arms and her face in the water in the tub, which was about half filled with water." The body of the insured was interred on October 22. On October 25 the company was notified of the death. On October 27 the company presented to appellant, the mother of the deceased, a document "requesting permission to make a post-mortem examination (autopsy) of the remains of Alice Howes, and to remove and make an examination of any specimen or specimens which it may be necessary to examine, either chemically or microscopically or both, and further requests permission to disinter the remains of said Alice Howes for the purpose of making said post-mortem examination." Permission to make the autopsy was refused by appellant on October 28. Thereupon the company denied liability, and appellant, as beneficiary of the policy, instituted this suit to recover the benefits thereof, alleging that the insured died as the result of accidental bodily injuries within the meaning of the policy.

At the conclusion of plaintiff's case, the court granted a motion for nonsuit, interposed on the ground "that there is no sufficient testimony of accidental death, and that it is shown that demand for an autopsy seasonably made was refused, to the prejudice of the defendant, and that notice of the alleged accident was not given within a reasonable time in view of the necessity of an autopsy, and the refusal to grant the same aft-

er burial." Although not disclosed by the record, it is conceded that the motion for nonsuit was granted because of the refusal to permit an autopsy to be made. The correctness of that ruling is the only question we need consider on this appeal.

The Insurance Code of the State of Washington (section 7235, Remington's Comp. Stat. Washington 1922, as amended by Laws 1929, p. 284, § 3 (Rem. Rev. Stat. § 7235), provides that all life and accident policies shall contain, among others, a provision that the insurer shall have "the right and opportunity to make an autopsy in case of death where it is not forbidden by law." The policy in suit contains such a provision. Appellant admits, therefore, that the company was entitled to an autopsy. It must also be admitted that, under the law, the refusal to permit an autopsy, if demand therefor is reasonably and seasonably made, constitutes a breach of the contract. It was so held in Clay v. Ætna Life Ins. Co. (D. C.) 53 F.(2d) 689, 691, citing General Acc. Fire & Life Assur. Corp. v. Savage (C. C. A. 8) 35 F. (2d) 587, 593, and Standard Acc. Ins. Co. v. Rossi (C. C. A. 8) 35 F.(2d) 667. ·

The county coroner who examined the body of the insured on the morning it was discovered reported the cause of death as "drowning accidental," but when called as a witness for the plaintiff he testified that he used the word "accidental" in contradistinction to suicide or homicide, and that the cause of death could only have been determined positively and accurately by an autopsy. It would seem, therefore, that there is no room for argument as to the reasonableness of the demand for an autopsy. Under the circumstances of the case, we do not believe the demand was unreasonable. Clearly, the demand, made two days after the company received notice of the death, was seasonable.

It is contended, however, that the question whether the demand was reasonably and seasonably made was for the determination of the jury. The cases relied upon as authority for that rule are Maryland Casualty Co. v. Harris (C. C. A. 3) 60 F.(2d) 810, 811, and cases there cited. We do not believe, however, that they are controlling here. In the Harris Case, the trial court had held, as a matter of law, that the refusal of the beneficiary to consent to an autopsy was not available as a defense to the company, because the demand was delayed until after the burial. In reversing the judgment, the appellate court said: "We are of the opinion that there was no way to determine, except by the finding of

the jury, whether the request was made within a reasonable time; that being a question of fact under all the circumstances. It was for the jury to determine the question whether the request was reasonably and seasonably made. In this conclusion we are in accord with the rulings of the Circuit Court of Appeals for the Eighth Circuit in General Acc. Fire & Life Assur. Corporation v. Savage, 35 F.(2d) 587, and Standard Acc. Ins. Co. v. Rossi, 35 F.(2d) 667."

The opinion in the Savage Case states that Savage died on Friday, December 31, 1926. The insurer was notified of the death on January 2, 1927, and the interment of the body occurred on the afternoon of January 3, 1927. No request was made for an autopsy until January 13, 1927, and no reason given for the delay in making such request. Under these circumstances, the court held that the question of whether the request was made within a reasonable time was properly submitted to the jury.

In the Rossi Case, the testimony on the question of whether an autopsy might have disclosed the cause of death was conflicting, thus raising the issue of whether the demand for an autopsy was reasonably and seasonably made. The court said that, "The question of whether the request for autopsy was reasonably and seasonably made was a matter for determination by the jury under the record before us," and the refusal of the trial court to submit that issue to the jury was held error.

In the instant case, Dr. Barnhart, a witness called by plaintiff, testified positively that "an autopsy would be the only thing that would positively give you the cause of death"; and there was no testimony to the contrary.

Since there is no dispute in the instant case as to the facts and circumstances under which the demand for an autopsy was made, and no doubt that such autopsy would have "positively" established the cause of death, we believe that the effect of the refusal of the beneficiary to consent to an autopsy presented "a question of law for the court, rather than a question of fact for the jury." See opinion of District, now Circuit Judge Sanborn, in the case of Clay v. Ætna Life Ins. Co., supra (D. C.) 53 F.(2d) 689, 693.

It is strenuously urged, however, "that the policy gives to the Company only the right to an autopsy and nowhere gives the added right to disinter the body for that purpose." It is true that provisions in an insurance policy must be construed most strong-

ly against the insurer. In the case of U. S. Fidelity & Guaranty Co. v. Hood, 124 Miss. 548, 87 So. 115, 117, 15 A. L. R. 605, strongly relied upon by appellant (distinguishable from the case at bar because the company had knowledge of the death before burial), it is said: "Provisions of contract of this kind, which are prepared by the insurer are to be construed most strongly against the insurer and in favor of the insured. Where there is no provision in the contract itself giving the right of an autopsy after interment, the court will construe the provisions to mean that an autopsy must be demanded and performed prior to interment, and, if the insurer desires to avail itself of this privilege, it must so arrange and provide for information to be given of the death prior to the interment." However, it must be remembered, as said in the recent case of Trueblood v. Maryland Assur. Co. of Baltimore, 129 Cal. App. 102, 18 P. (2d) 90, 94, that: "Circumstances may arise which will entitle an insurance company to exhume and examine the body of an insured person after burial. When the insurance company has no information regarding the death or the cause thereof until after the body has been buried and there is reason to believe the post mortem examination will disclose facts which will release the company from liability, it may be just and proper to hold an autopsy even after burial." Such is the situation in the case at bar. In the several federal court cases cited supra, those courts recognized the right of an insurance company to disinter a body and make an autopsy for the purpose of determining the exact cause of death. In each of those cases the policy in suit contained a provision similar to the provision in the policy before us—that, in case of death, the company should have the right to make an autopsy. In the Savage Case, the court said: "The policy itself conferred the right to examine the person of the insured as often as the company might reasonably require, and also the right and opportunity to make an autopsy in case of death. These provisions, construed together, gave the right to an autopsy when reasonably required. As it was not agreed the request should antedate the burial, it was sufficient to make it in a reasonable time after the death."

It is also contended "that provisions in insurance policies giving the right to an autopsy are in great disfavor with the courts where it is attempted to exercise the right after the insured's body has been buried." In some of the cases relied upon in support of this proposition, the insurance company, or its agent, had knowledge of the death of the insured before the body was buried, but nevertheless failed to request an autopsy until after interment; and in other cases the demand for an autopsy was not seasonably made, or was unreasonable under the circumstances. In this case, the company had no knowledge of the death of the insured until after the body was interred.

The remaining contentions of appellant are as follows: (1) "Under the statutes of the State of Washington it is a crime to disinter a body once buried for the purpose of dissection without authority of law." (2) "The 'authority of law' must be some act of the legislature, and the Washington legislature has provided that in order to disinter a dead body a permit must be obtained from certain authorities." (3) "The record in this case discloses that appellee never sought to obtain a permit in accordance with the law and there is nothing to show that it could not have obtained the permit, without the permission of appellant, or that her refusal in any way prejudiced appellee, or made it more difficult for appellee to obtain a permit to disinter the body." The statutes referred to are sections 2489, 2490, and 2491 of Remington's Revised Statutes of Washington. The arguments advanced are without merit. As said in the Rossi Case, supra, where it was also contended that the state statutes forbade disinterment for the purpose of dissection: "Clearly this is a perversion of the plain intendment of the language used. The legislative prohibition was addressed to the unlawful practices obtaining in times past, before modern methods of burial prevailed whereby comparative security is attained. Bodies were exhumed, removed, and sold for dissection for scientific purposes. The desecration of graves was made the subject of commercial traffic, and it is against this practice that this law was aimed. It had no reference to post mortem examinations for the purpose of detecting the commission of crime or of fraud or injustice in civil proceedings." Appellant, as the mother of the deceased, is undoubtedly the "next of kin" who may, as provided in § 2489, supra, "authorize dissection for the purpose of ascertaining the cause of death."

The judgment of nonsuit is affirmed.