### MUTUAL LIFE INS. CO. OF NEW YORK v. McCULLOCH et al.

#### No. 14.

District Court, S. D. West Virginia, at Bluefield.

Sept. 27, 1939.

Brown, Jackson & Knight, Thomas B. Jackson, and Frank R. Lyon, Jr., all of Charleston, W. Va., for plaintiff.

B. J. Pettigrew, of Charleston, W. Va., and File, Scherer & File, of Beckley, W. Va., for defendants.

McCLINTIC, District Judge.

This is a civil action to establish primarily, by injunctive procedure, the right of plaintiff to an autopsy upon the body of John H. McCulloch. While other and additional relief is sought, this hearing was limited to and involved only the matter of injunctive relief.

Under date of June 13, 1928, plaintiff issued to John H. McCulloch two policies of life insurance in the face amounts of $30,000 and $20,000, with his wife, Effie L. McCulloch, as principal beneficiary thereunder and his two children as contingent beneficiaries. Both policies contained a "double indemnity" clause worded as follows:

"The Double Indemnity will be payable upon receipt of due proof that the Insured died as a direct result of bodily injury effected solely through external, violent, and accidental means, independently and exclusively of all other causes, and of which, except in the case of drowning or asphyxiation, there is evidence by a visible con-

tusion or wound on the exterior of the body, and that such death occurred within ninety days after the date of such injury; provided that the Double Indemnity shall not be payable if death resulted from self-destruction, whether sane or insane, or from military or naval service in time of war, or from any act incident to war, or from engaging in riot or insurrection, or from committing an assault or felony, or from participation in aeronautics, or directly or indirectly from disease or bodily or mental infirmity.

"The Company shall have the right and opportunity to examine the body and to make an autopsy unless prohibited by law."

Saturday evening, March 18, 1939, McCulloch fell down a flight of stairs at the Black Knight Country Club, Beckley, West Virginia, sustaining a fracture of the skull, and died within eight or ten minutes after the fall. The apparent cause of death, according to a number of physicians who examined the body after death, was the fracture of the skull sustained in the fall.

The next day, Sunday, L. E. Huffman, a soliciting agent of plaintiff who had sold the policies to McCulloch, learned of the death and sent notices of such to the branch office of plaintiff in Wheeling, West Virginia. The newspapers in Charleston, where Mr. Huffman resides, carried conflicting reports as to the cause of death, one paper saying it was the result of a fall and another paper saying it resulted from heart failure. Mr. Huffman notified the Wheeling office of the variance.

Monday morning the Wheeling office called Mr. Huffman and told him that proofs of death had already been sent to the local agent in Beckley, whereupon he advised them that a prompt investigation should be made as to the cause of death, to which Mr. Heinrich, of the Wheeling office, replied that the home office would be notified immediately in the usual way. Neither Mr. Huffman nor the Wheeling office had any jurisdiction over investigations or determining whether an autopsy should be made, which matters were determinable only by the home office of the company in New York.

After the conversation with the Wheeling office, at about eleven o'clock A. M. Monday, Mr. Huffman called Dr. Tieche, brother-in-law of deceased, who explained the facts surrounding the death and indicated that if an autopsy were to be performed it would have to be prior to burial.

Huffman expressed his opinion that the company would not require an autopsy but that the proofs of death would be handled through the Beckley agent and not through his office.

The burial was at two-thirty o'clock Tuesday afternoon, March 21, and no request for an autopsy was made prior to that time. The proofs of death were completed and returned to plaintiff March 29, 1939, and on April 3, 1939 plaintiff wrote to the widow, Effie L. McCulloch, stating that as a claim for double indemnity had been made it would be necessary for the company to make an autopsy on the body of deceased to determine whether death was due to accidental means. This request was refused upon the grounds that opportunity had been given plaintiff to perform an autopsy before burial, and the abhorrence of the widow, as well as decedent himself, of exhumation and post-mortem. No request for an autopsy was made of the children.

The body is now in a mausoleum in Beckley, which burial place is the property of defendant, Homeseekers Land and Building Company, which is legal custodian of the body. It was embalmed and is in a good state of preservation.

Plaintiff here seeks to enjoin the defendants from interfering with it in the performance of an autopsy on the body of McCulloch. At the hearing on this matter, plaintiff sought to show that the deceased drank a considerable amount of alcohol during the last few years of his life and that death might have been caused by other than accidental means, which could be disclosed in no other way than by an autopsy.

The exhumation of a body for purposes of an autopsy is abhorrent to almost anyone who was close to deceased during his lifetime and who cherishes a memory of him as he was in life. It should be done only when necessary to protect the rights of those who remain on this earth. It is the duty of a court to protect such rights, but it is also a duty of a court to see that such rights are exercised in a manner that will not cause unnecessary suffering for those others against whom they are to be exercised. All too often, however, point is reached where the protection of the one would cause an unreasonable burden on the other. Then sentiment must be cast aside and a determination of the case must be made on purely legal grounds.

■ It is well established that a provision in an insurance policy providing for an autopsy is a valid and enforceable provision of the contract and that a failure to accede to a demand therefor, when reasonably and seasonably made, is a violation of the policy. Standard Accident Ins. Co. v. Rossi, 8 Cir., 35 F.2d 667; General Accident Fire & Life Assurance Corp. v. Savage, 8 Cir., 35 F.2d 587; Clay v. Aetna Life Ins. Co., D.C., 53 F.2d 689; Howes v. United States F. & G. Co., 9 Cir., 73 F.2d 611.

■ It has also been held by most courts that the right to an autopsy, to be available to an insurance company, must be expressly reserved in the language of the policy. Harris v. Maryland Casualty Co., D.C., 2 F.Supp. 188. In the case at bar the policy contained such express reservation, the only exception being "unless prohibited by law." The court is cognizant of no law in this jurisdiction prohibiting the performance of an autopsy, the criminal laws dealing with the desecration of graves, etc., not being deemed applicable to a situation where there is just cause. Standard Accident Insurance Co. v. Rossi, supra. Thus the reservation of the right to an autopsy in this policy would seem to be absolute.

■ However, even such an absolute right must be seasonably and reasonably exercised and such exercise, the court feels, must be in good faith. Wehle v. United States Mutual Assurance Ass'n, 153 N.Y. 116, 47 N.E. 35, 60 Am.St.Rep. 598; Johnson v. Bankers' Mutual Casualty Co., 129 Minn. 18, 151 N.W. 413, L.R.A.1915D, 1199, Ann.Cas.1916A, 154. The court cannot agree with defendant's contention that the right to an autopsy does not carry with it the right of exhumation unless specifically reserved. In many instances notice of death is not given to an insurance company until long after burial. In such case the right to autopsy would be of no value whatever to the insurer unless it carried with it the right of exhumation, and the loss of such right would be through no fault of its own. If the right to autopsy is demanded within a reasonable time, and in good faith, it carries with it the right to exhume when necessary. Howes v. United States Fidelity & Guaranty Co., supra. Painter v. United States Fidelity & Guaranty Co., 123 Md. 301, 91 A. 158, 160.

■ Whenever possible an autopsy should be performed before burial, as a matter of public policy and sentiment. However, it is of equal interest to the public that the right to an autopsy should not be exercised at all, before or after burial, unless an investigation of the health of the deceased or circumstances surrounding his death reveal that an autopsy might indicate that death was caused by other than accidental means and might thus avoid fraud or mistake. Thus the court feels that it would be impractical to lay down a hard and fast rule that the right to perform an autopsy is waived unless exercised before burial. The insured binds himself by the terms of the policy and those who benefit as a result thereof are also bound thereby. If the autopsy clause is to mean anything at all the insurer must be given a reasonable time within which to determine whether an autopsy is necessary.

■ In the present instance the plaintiff was notified of McCulloch's death Monday morning, when the branch office at Wheeling received Huffman's telegram. The funeral and burial were set for Tuesday. This left only one day for an investigation to be made. Had an investigation been made Monday, and as a result the plaintiff had deemed an autopsy to be advisable, the demand for such would have been made Tuesday, the day of the funeral. As stated in Johnson v. Banker's Mutual Cas. Ins. Co., supra [129 Minn. 18, 151 N.W. 415, L.R.A.1915D, 1199, Ann.Cas. 1916A, 154], an autopsy must be made within a reasonable time after death and "on similar principle, we think it must also be held that such a demand, to be effective, must be made at a reasonabe time and upon a proper occasion. We are of the opinion that demand made in this case was not made at a reasonable time or upon a proper occasion." The demand in that case was made the day of the funeral and the court denied the insurer's contention that the refusal of that demand was a good defense to a claim under the policy, because the demand had not been made upon the proper occasion. This court would, in all probability, reach a similar conclusion had a demand and refusal been made Tuesday morning. So it hardly seems that under the facts in this case the one day before burial would have been a reasonable time within which to make an investigation and demand an autopsy. The demand was made April 3d, about two weeks after McCulloch's death, and the court feels that

that was not an unreasonable delay, if made in good faith, in making such demand.

Cases of this sort, where reasonableness of time is involved, must be decided upon the facts and circumstances of each individual case. Defendant cites a goodly number of cases holding that demands made at periods ranging from three days to six weeks after burial constituted a waiver of the autopsy clause. It would be useless for this court to attempt, in this opinion, to distinguish each of those cases. However, as indicated by plaintiff's reply brief, most of them can be distinguished because of a different fact situation or some other reason. In some of them the right to an autopsy was not expressly reserved, in others the insurer's agents had ample opportunity to make an investigation prior to burial, and in still others there was a complete lack of any showing of good faith upon the part of the insurer—any one of which might induce a court to decide against an insurance company. Some of those cases seem to hold that demand for an autopsy, to be effective, must be made before burial. If those courts intended such a holding to be a strict rule of law in every case, this court cannot agree with them. Clay v. Aetna Life Ins. Co., supra. An autopsy should be demanded and performed before burial if possible, but to construe an autopsy clause, such as the one in the policies here involved, to mean that under all circumstances a failure to make a demand therefor before burial is a waiver thereof, would be reading something into the contract that the contractors did not put there.

Most of the cases cited by defendant were actions on the policies, to which the insurance company sets up denial of its right to an autopsy as a defense. In this case plaintiff is seeking by injunctive process to attempt to learn the true cause of death in advance of an action for liability on the double indemnity clause. It is conceivable that in cases such as the ones above mentioned, courts would and should apply a harsher rule in construing the contractual right than in a case such as this one. The plaintiff here has shown by its method of procedure that it is acting in good faith. Whether an autopsy will disclose that McCulloch died as a result of other than accidental means cannot be determined at this time. The testimony of expert witnesses indicates that autopsy is the best way to determine the true cause of death. It is not the province of a court to say that an autopsy will or will not be of aid to the plaintiff. The insurer has reasonable grounds to believe that it might disclose something that will prevent payment of the double amount—otherwise procedure such as is used in this case would be foolish. Where a mistake may be avoided by the exercise of a contractual right within a reasonable time and in good faith, and where the denial of such right would forever bar the door upon a possible disclosure of such mistake, this court feels that it must grant the relief sought despite the fact that it will cause unhappiness to certain of the individuals against whom it is given.

Defendant further contends that the demand for an autopsy, to be effective, must have been made not only upon the widow but also upon the children of deceased, who were contingent beneficiaries under the two policies. The court cannot agree with this contention. In the first place, at the time this demand was made both children were under the age of twenty-one and no guardian had been appointed for them. There was no one to speak for them except their mother, upon whom the demand was made. To hold that the insurer must wait until a guardian is appointed for the children and then make a demand upon them would be at cross-purposes with a holding that the insurer, in order not to waive its rights under an autopsy clause, must demand such right as soon as reasonably possible after the death of the insured. Furthermore, the widow had control and the right to possession of the body and the children were incapable of exercising any dominion thereover or disposition thereof. Also, the children are only contingent beneficiaries and have no immediate or positive rights under the policies. Had a demand been made of the children and had they acquiesced therein, the refusal of the widow would have been sufficient to warrant this proceeding and to warrant the equitable relief sought by plaintiff in protection of its legal right. This court feels that the demand made upon the widow, who was principal beneficiary, was sufficient.

I can see no value in a discussion of whether notice to Huffman, the soliciting agent of plaintiff, was notice to the plaintiff. It is admitted by defendants that Huffman had no authority to waive the

right to autopsy and even if I considered Huffman to be such an agent of plaintiff that notice of death to him would constitute notice of death to the company, it would not change my opinion that the demand was made within a reasonable time and that there was no waiver of the autopsy provision.

The injunction will be granted.