The opinion of the court was delivered by
Miller, J.
The plaintiffs, the son of the late Dr. Ohoppin and the widow and children of the late Arthur Ohoppin, sue to enjoin the *1218 defendants from disturbing the remains of Dr. Choppin, Arthur Choppin and other members of the Ohoppin family. The petition alleges that the bodies of the deceased members of the family, at the request of the late Dr. Maximillian A. Dauphin, were placed in the tomb constructed by him with the desire on his part, communicated to and accepted by petitioners, that the tomb should be the last resting place of these remains, and averring that the defendant, the widow and legatee of Maximillian Dauphin, threaten, to remove the remains, in violation, it is charged, of his obligation and of her duty as his legatee; the petition, besides the injunction to restrain such removal, prays for judgment decreeing the tomb to be forever dedicated to serve as the burial place of the remains interred therein of the deceased members of the family. The answer of Mrs. Dauphin asserts title to the tomb as legatee of her husband; that he never dedicated it for the purpose stated in the petition, denies that plaintiff ever acquired any right to the tomb or “its occupancy” for the purposes of sepulture, and avers that such occupancy was permitted by M. A. Dauphin from kindness to the Choppins, he having married one of the-family; the answer disavows the threats imputed to respondent of removing the remains; avers the tomb is expensive to keep; that she has built a tomb to which the remains of her husband have been transferred, and, desirous of selling the tomb for which she has no use, the answer alleges she made the offer of such sale to plaintiffs, hence it is alleged the injunction issued wrongfully and the prayer is for its dissolution, reserving respondent’s right to damages. From the judgment maintaining the injunction Che defendant appeals.
Our attention is directed in the briefs for the defendant to the objection to ali the testimony offered by plaintiff to show the statements and acts of Maximillian A. Dauphin, importing the obligation on his part that the tomb should be the permanent sepulchre for the remains of the Choppins. The argument of the counsel for the defendant is, that the plaintiffs, asserting an easement or servitude on the tomb or a title to it, can produce no parol proof to support their pretensions. While the petition claims an easement or servitude on the tomb, we must consider all the allegations on which plaintiffs rely. The substantial issue tendered by the petition is that Mrs. Dauphin, by words and conduct, held outto plaintiffs that the remains of their dead should rest forever in this tomb, on the faith of which *1219 plaintiffs consented to the removal of the remains from other sepulcheres Dr. Dauphin after this consent effecting that removal and causing to be carved on the tomb the names of the dead along with his own name. After all this, the plaintiffs contend neither Dr. Dauphin or his legatee can require the removal of the remains. We do hot think the question is one of title, hence is not affected by the rule of proof cited by the plaintiffs, but is to be solved by other tests.
We do not appreciate there is any material contention as to the facts. The friendship between Dr. Ohoppin and Dr. Dauphin; the mode of manifesting that friendship chosen by him, of an imposing tomb and his inscription upon it of the names of his friend and óf the deceased members of his family, with that of Dr. Dauphin; the fact that he caused the remains of the deceased, Dr. Ohoppin having died about three years before the tomb was built, the others years before; the avowal of Dr. Dauphin to plaintiff that the tomb was to be devoted to the uses prompted by his affection for the family, and the reliance upon his assurances evinced by the consent of plaintiffs io the transfer of the remains, and that Mr. Dauphin caused their names to be placed with his own on the tomb, are, we think, placed beyond controversy by the record. There is left the legal question so elaborately argued.
We appreciate that servitudes exist only for the benefit of immovable property, or the profit and advantage of the living. Civil Code, Arts. 709, 753, et seq. We do not perceive any basis to sustain any right of plaintiffs in the nature of a servitude of burial in this tomb. We recognize, too, that the title to immovable property in Louisiana must conform to ownership, and its modifications prescribed by the Code, Arts. 490, 492, 533, 636, et seq.; State vs. McDonogh, 8 An. 351; Succession of McCann, 48 An. 145. The title to burial ground admits of none of the modifications established for the advantage of estates or the uses of individuals. The title to this tomb is in the legatees of Dr. Dauphin, as it was in him in his life. McEnery vs. Pargoud, 10 An. 497; Burke vs. Wall, 29 An. 46. The plaintiffs assert'no title to the property. They demand only the injunction to. restrain the removal of the remains. While we recognize the title of the legatee of Dr. Dauphin, the inquiry is whether, consistently with that title, the plaintiffs by the acts of Dr. Dauphin are not entitled to prevent the removal, the subject of discussion.
*1220 The disturbance of the remains of the dead except for lawful necessary purposes, is not encouraged. With due regard to the sentiment on that subject as well as public policy, courts have enjoined disinterments and even denied the enforcement of a mortgage upon burial ground. 33 Pennsylvania, 422; 8 Abbott (N. Y.), 159, cited in 12 U. S. Digest, No. 124, and other similar types of authority are to be found in the decisions of the courts of other States. It is needless to dwell on the assurances of Mr. Dauphin and their acceptance by plaintiffs under which their dead were removed by Mr. Dauphin and deposited in his tomb. There was by his words and still more by his conduct, the manifestation of his purpose that the remains of the Ohoppins should have a final resting place in this tomb, and on the faith of that purpose so distinctly avowed, these plaintiffs permitte'd the transfer of the remains of their dead. In our view, after all this Dr. Dauphin could never have made the demand so violative of good faith and repulsive in all respects, as that which this suit supposes was advanced by his legatee. The principle of estoppel so often applied in controversies involving pecuniary rights, will not permit the withdrawal of promises or engagements on which another has acted. It seems to us that the principle can well be applied to this controversy. To disturb the mortal remains of those endeared to us in life sometimes becomes the sad duty of the living. But except in cases of necessity, or for laudable purposes, the sanctity of the grave should be maintained, and the preventive aid of the courts may be invoked for that object. The remains contained in the tomb, the subject of this controversy, having been laid away under the assurances of final repose, shown by this record given by the tomb owner, must, in our opinion, hold good against his heir, as they would have been maintained against the owner in life. While the title to the tomb is in the heir, she is, in our view, concluded by the acts and conduct of Mr. Dauphin from disputing the plaintiffs’ right to require that the tomb shall remain now as designed by him, the sepulchre for the remains now in it of the deceased members of the Ohoppin family.
It is claimed plaintiffs had no right to enjoin. The letter from Dr. Dauphin’s legatee, that caused the injunction, announced her purpose to sell the tomb, offering it first to plaintiffs. The letter implied the exclusive power of the legatee over the tomb, and to sell involved, as the plaintiffs understood and appreciated, the removal of *1221 the remains. We think that appreciation was natural. The petition for the injunction asserting the right to the tomb as the supulchre for the remains was met by the answer, not disclaiming the purpose attributed to the heir in the petition, but denying the right asserted by plaintiffs, and insisting that the remains placed in the tomb by the kindness of Dr. Dauphin were there only by sufferance. If, as we maintain, it was competent for the plaintiffs to require that the remains should continue in the tomb, they had the right to enjoin the removal, and, however intended, the letter sent them, in our view, authorized their apprehension of that removal. The issues and discussion of the controversy have required from us a decision of the question on the theory that the removal of the remains was proposed on the one hand and resisted on the other. While we are required by the pleadings and discussion to deal with the case as exhibiting this complexion, it is proper to say that no purpose of this removal was ever entertained by Dr. Dauphin, and any such purpose on the part of his heir has been disclaimed in the argument. We think, however, that the plaintiffs, placing a reasonable interpretation on the letter of the heir, were entitled to the injunction.
It is therefore ordered, adjudged and decreed that the judgment of the lower court be affirmed with costs.