## TRAVELERS INS. CO. v. WELCH.
### No. 7833.

Circuit Court of Appeals, Fifth Circuit
March 26, 1936.

Howard B. Warren and Clare C. Clark, both of Shreveport, La., for appellant.

Arthur O'Quin and Leon O'Quin, both of Shreveport, La., for appellee.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

SIBLEY, Circuit Judge.

This appeal is from a judgment upon a policy of accident insurance, and raises questions whether a finding of death by suicide rather than accident is demanded, and whether refusal of the beneficiary to accede to a demand for an autopsy defeats recovery, and whether instructions to the jury on these subjects were correct. The evidence all goes to show that the insured was in good health, fond of his wife and young daughter, had employment and was in hopes of a profitable business, his circumstances being no more depressed than was common in the summer of 1933. On Saturday, August 5, 1933, he was a guest at the fishing camp of a friend, and had been in good spirits all afternoon. About dusk he and another friend went from the house fifty yards to the dock to look after some fish hooks set there. Insured had his pistol, and shot at a turtle, and allowed the little son of his host to shoot also. They were called in to supper, insured's companions going straight up the hill while insured walked around by the usual path. Just after the others reached the house another pistol shot was heard, but no notice taken of it. Soon the little boy called

the attention of the others to the insured lying in the path ten steps from the house and in plain view. They went to him, and found him stretched out on his stomach or left side with head towards the house, the pistol in his left hand partly beneath the left hip, his thumb through the trigger guard. Four used cartridges were in the pistol, and no others. He was shot through the head, the ball having entered just above and to the rear of the left ear and passed out below the right ear. It had been raining, and the path was wet, slippery, and steep, and just below insured's feet was a mark two feet long looking as if his foot had slipped. The pistol could be fired without cocking it by a blow on the hammer or by pulling the trigger. There were no powder burns about the wound, showing, as the testimony indicated, that the pistol was over five or six inches away. Insured was right handed.

It is possible, as argued for the appellant, that insured voluntarily held the pistol in his left hand, pressed the barrel to his head, and fired it with his thumb on the trigger. It is also possible that he was carrying the pistol in his left hand as he rapidly climbed up the wet path, that he slipped and threw his left hand forward to catch himself and got his thumb in the trigger guard and involuntarily fired the pistol with his head down near his hand, the body afterward lurching further forward and falling upon the left hand. Almost anything can happen in a fall. The circumstances both of his character and life and his immediate surroundings do not suggest but strongly negative any purpose to take his own life. The case was easily one for the jury. We have examined the charges of the court on the general burden of proof and on the use of the so-called presumption against suicide, and do not find them seriously at variance with our holdings in Travelers' Insurance Co. v. Wilkes, 76 F.(2d) 701, and Fidelity & Casualty Co. v. Driver, 79 F.(2d) 713.

Touching the autopsy, the policy provides under the heading "Standard Provisions" as follows:

"8. The Company shall have the right and opportunity to examine the person of the insured when and so often as it may reasonably require during the pendency of claim hereunder, and also the right and opportunity to make an autopsy in case of death where it is not forbidden by law."

There is no express provision making this a condition of the insurance or declaring that the insurance is to be forfeited if an autopsy is denied. We find no Louisiana statute on the subject of autopsy except section 7615, Dart's La.Gen.Stats., which authorizes a coroner to hold one. Dart's La.Code Cr.Proc. art. 1295, declares it a crime to willfully desecrate a grave, tomb, or monument to the dead. In Choppin v. Dauphin, 48 La.Ann. 1217, 20 So. 681, 33 L.R.A. 133, 55 Am.St.Rep. 313, the Supreme Court held that bodies permanently entombed by the tomb owner could not be removed by his heirs, and referred to common-law authorities. The insured here died August 5th. The insurer's local agent who had collected the last premium on the policy heard of the death August 6th, and went to insured's home then. S. L. Brown, an adjuster of the insurer, was told of it and of the insurance the night of August 6th, and was present at the coroner's inquest over the body held next day at 2 p. m. He made no request then for an autopsy, but says he had no authority from the home office to ask one. The coroner was a physician, and experienced in gunshot wounds. He testified fully at the trial; among other things, that he did not consider having an autopsy, since he saw by his external examination all that could be discovered by an autopsy. The body was buried that afternoon after the inquest. The local agent furnished the blank proofs of loss which were sworn to August 14th, and apparently filed August 24th. On September 9th, Brown, in the name of the insurer, wrote to plaintiff, insured's widow, referring to the policy and her claim under it, and saying that under provision 8 of the policy the right and opportunity of making an autopsy was requested and demanded at such time within ten days as she might name, and designating the coroner himself as the insurer's selection to make it. This was answered September 18th by saying the request was unreasonable and came too late. This transaction was pleaded as a breach of the contract defeating the insurance, since an autopsy would have shown that the pistol was held pressed against insured's head. A physician other than the coroner testified that if a pistol were pressed against the head the gases would enter the head and by expanding there leave traces that would be informative. The coroner testified that the gases from a pistol so fired would burn under the scalp around the wound and that he could have observed that without opening the head, and he thought that he had discovered all that was discoverable. The appellant contends that a verdict in its favor should have been instructed on this evidence, and that the court erred in submitting the matter to the jury on a charge which barred recovery only if plaintiff refused an autopsy arbitrarily, but not if the request for one was not made at a reasonable time after notice of claim under the policy or if the autopsy was not reasonably necessary for the purpose of throwing light on the question of suicide or accident.

There is no strict property in a corpse, and after burial it becomes a part of the ground to which it is committed. But the law has always given it great consideration. The right to possess, preserve, and bury it belongs in the absence of testamentary direction to the surviving spouse if there is one, and if not to the next of kin, who may maintain an action for a deprivation of the right of sepulture or a mutilation of the body. Both under the Roman and the English ecclesiastical law and the law of Louisiana (Choppin v. Dauphin, supra), a body once suitably buried ought to remain undisturbed except for necessary or laudable reasons. It is said that at common law only the owner of the land where the body is buried could sue for a disinterment or disturbance of the grave. But at common law and generally now by statute it is a crime to interfere with a burial or to disinter without authority, but the statutes are held not to prevent such action by public officials or by relatives for the purpose of reinterment and the like. These propositions are supported by the text and citations in 17 C.J., Dead Bodies, page 1136. We assume that by the law of Louisiana not only may the coroner by express statute delay interment or cause a disinterment for the purpose of an autopsy in the interest of public justice, but that for the promotion of the truth in private litigation such as this a court may lawfully order it, or the beneficiary of an insurance consent to it. It is to be borne in mind that an autopsy is not a mere examination of the body, but involves its mutilation by dissection. The right to examine the person of the insured mentioned in the first clause of the quoted policy provision if applicable after death does not cover mutilation by dissection. Sudduth v. Travelers' Ins. Co. (C.C.) 106

F. 822. The latter clause about the autopsy is alone for application. It says: "The Company shall have * * * .the right and opportunity to make an autopsy in case of death where it is not forbidden by law." The insured agreed to that by accepting the policy, and, of course, the beneficiaries are bound by it when attempting to enforce it. This policy does not make the provision a condition of the insurance, nor say that the insurance is to be void unless or until the right is recognized, or that the right is warranted. It does not bind the beneficiary to make or forward the autopsy, but by implication does bind him not to obstruct it. If by law his consent is necessary, he ought to give it. The clause does not affect the risk, but applies only after a loss and is concerned with the proof or disproof of the loss. Breach of such a post-loss right, no matter how clearly reserved in the policy, is usually held not a bar to the insurance unless expressly made so. Hamilton v. Home Ins. Co., 137 U.S. 370, 11 S.Ct. 133, 34 L.Ed. 708; Goldberg v. Provident Washington Ins., Co., 144 Ga. 783, 87 S.E. 1077. Sometimes a right reserved by contract is enforced by withholding recovery until plaintiff recognizes it pending suit. United Autographic Register Co. v. Wight (C.C.A.) 272 F. 545. But the courts very generally without any discussion of the matter have assumed this autopsy clause to be a condition or promissory warranty, and then have gone about saving the insurance by holding that the clause had been waived or was for some other reason ineffective. But the cases are rare in which the insurance has been held defeated. One is Sheehan v. Commercial Travelers' Mutual Accident Association, 283 Mass. 543, 186 N.E. 627, reported with an extensive annotation in 88 A.L.R. 975. In that case the provisions about autopsy were expressly referred to in the policy as conditions, and the particular right there denied was that of being present at an autopsy which was actually held but without notice to the insurer. The only authorities cited are Massachusetts cases, none of which had anything to do with an autopsy. The holding was that compliance with the autopsy clause was a condition precedent to recovery, the burden of proving which was on the beneficiary, the executrix of the insured's estate, though she had not been appointed when the autopsy was held. The decision is a drastic, literal application of the clause as a condition precedent, no

fraud or bad intention or probable detriment to the insurer being mentioned. The cases relied on by appellant where recovery was denied for refusal of an autopsy are Clay v. Ætna Life Ins. Co. (D.C.) 53 F.(2d) 689, and Howes v. United States F. & G. Co. (C.C.A.) 73 F.(2d) 611. In both the autopsy clause was prescribed by state statute, which established its validity but should not change its construction. In both the idea that a refusal by the beneficiary to consent to an autopsy defeated the insurance was rested on the decisions in General Acc., Fire & Life Assur. Corp. v. Savage (C.C.A.) 35 F.(2d) 587, and Standard Acc. Ins. Co. v. Rossi (C.C.A.) 35 F.(2d) 667. In both the Savage and Rossi Cases the insurance was upheld, and in both the statement that refusal to consent to the autopsy was a breach of the insurance contract such as would defeat it was made in a single sentence, without argument or citation of authority. The question deserves fuller consideration. We are unwilling in the absence of clear language of condition or warranty to thus apply the present policy provision. It ought to be treated as intended not as a means of evading liability, but rather as a means of getting evidence of the truth. Only for the latter purpose is it consistent with sound policy. When the circumstances do not indicate any fraudulent burying of the truth or any likelihood that important evidence would be discovered by dissection even of an unburied body, courts ought to be slow, as they have been, to defeat insurance on account of this provision. Specific enforcement of the right is more logical than forfeiture. A fair interpretation of it is that the insurer shall be permitted by the consent of those entitled to give consent to have such autopsy, or if they will not consent, to appeal to a court to decide on the propriety of it. The beneficiary is often not the person having the right to control the body for sepulture or the ground where it may be buried, so that the beneficiary's consent or refusal would amount to nothing. If the beneficiary should not refuse, but these others did, is the insurance to be held defeated by a literal nonfulfillment as of a warranty? Or the beneficiary may be a child, as one of them is here. Or the beneficiary may be ill advised in refusing but would yield to the order of a court. Even where there was no autopsy clause in a disputed insurance, a court of equity was held able to order exhumation and autopsy because

of its power to defeat fraud and to perpetuate evidence in Mutual Life Ins. Co. v. Griesa (C.C.) 156 F. 398. Under an autopsy provision like that before us the Kentucky Court of Appeals held that it was in the discretion of the court trying a suit on the policy to order exhumation, it appearing that the beneficiary had refused an autopsy but that the insurer had been diligent and the exhumation would likely determine the issue. Whitman v. Kentucky Central Life & Accident Ins. Co., 232 Ky. 173, 22 S.W.(2d) 593. Under a fire policy which reserved the right at all times to inspect the damaged property, the trial court compelled a refused inspection, but held that the insurance was not voided by the refusal. Maughiman v. National Ben-Franklin Ins. Co., 196 Mo. App. 367, 194 S.W. 893. In Painter v. United States F. & G. Co., 123 Md. 301, 91 A. 158, a bill for discovery and to perpetuate testimony was upheld to obtain an autopsy under a policy provision like the one we are considering. Such procedure to obtain evidence of the truth when the circumstances authorize it is a much better application of the clause than to treat it as forfeiting the insurance on any failure to get an autopsy under the strict words of it, or because of a refusal of an autopsy by the beneficiary under a more liberal construction of it. Many courts have been holding that the insurer in order to defeat the insurance must demand an autopsy, and demand it of the beneficiary, and that the demand must be reasonably and seasonably made, thus putting a very loose meaning on it, if not actually injecting terms that are not there. But they have assumed without discussion that if a demand be so made and refused by the beneficiary the remedy of the insurer lies not in having a court to enforce the right to the autopsy where practicable and necessary, but in defeating the insurance. This court so assumed in Employers' Liability Assurance Corporation v. Dean, 44 F.(2d) 524, but held that the widow and beneficiary was not bound to make the autopsy or to have it made on demand, and that her failure to reply to a demand for exhumation, especially where there was gross exaggeration of the time required for it, did not prevent her recovery. In Schachner v. Employers' Liability Assurance Corporation, 268 Ill.App. 503, it was held that the beneficiary was under no duty to initiate communications about an autopsy, and where she cremated the insured's body before learning about the policy she could recover, although she had destroyed the right to an autopsy. A like decision was made under like circumstances in Ocean Accident & Guarantee Corporation v. Schachner (C.C.A.) 70 F.(2d) 28. As has already been stated, the burial of the body always materially alters its situation. Its custody and its disposition, including the right to consent to an autopsy, is before burial in the spouse or next of kin. After burial, the rights of the landowner become involved. The public law also has very rigorously guarded the grave. In United States F. & G. Co. v. Hood, 124 Miss. 548, 87 So. 115, 15 A.L.R. 605, it was held that the whole burden of securing an autopsy under the clause here discussed was upon the insurer, that the clause should be strictly construed as authorizing autopsy only before interment, and if held to refer to exhumation it would be contrary to public policy under the laws of Mississippi. A contrary holding was made under the laws of Utah in General Accident, Fire & Life Assurance Corporation v. Savage (C.C.A.) 35 F.(2d) 587, and under the laws of Arkansas in Standard Accident Ins. Co. v. Rossi (C.C.A.) 35 F.(2d) 667; though in both these cases means were found for permitting a recovery. In Couch Encyc.Ins.Law, § 1598, the statement is made: "The courts have uniformly denied the right of the insurer to insist by virtue of a provision for an autopsy upon the exhumation of the body for the purposes of examination or autopsy as a condition to liability." In the cases of Schachner and of Hood, just cited, some emphasis was laid upon the fact that persons connected with insurer knew of the death and could have communicated with the insurer and caused a request for the autopsy before burial or cremation, if desired. See, also, Johnson v. Bankers' Mutual Casualty Insurance Co., 129 Minn. 18, 151 N.W. 413, L.R.A.1915D, 1199, Ann. Cas.1916A, 154. This circumstance is large in the case before us. The local agent knew of the death and the insurance and told the adjuster, and the latter examined the scene of the tragedy and attended the coroner's inquest, but so far as appears made no communication with his company. He it is that five weeks later asked the exhumation for autopsy, and named the coroner to make it; and the coroner now testifies that he thinks nothing more could be learned. Under these circumstances, had the court been asked to force

an autopsy, the exhumation ought to have been refused. As the judge put it to the jury, it was neither reasonable to exhume nor necessary in order to obtain probably important evidence to have an autopsy. We are of opinion that exhumation on demand for an autopsy was not a condition of the insurance nor a warranty under the wording of this policy; and certainly there was no forfeiture of the insurance under the facts proven. The instructions to the jury were not erroneous as against the insurer.

Judgment affirmed.