Mrs. Jeanne LABICHE, Widow of Thomas Reagan, Jr., as Natural Tutrix of Thomas N. Reagan, Plaintiff,

v.

CERTAIN INSURANCE COMPANIES OR UNDERWRITERS AT LLOYD'S, LONDON, ENGLAND, Defendants.

Civ. A. No. 11074.

United States District Court
E. D. Louisiana,
New Orleans Division.

Aug. 9, 1961.

Porteous & Johnson, William A. Porteous, Jr., New Orleans, La., Symmers, Fish & Warner, William G. Symmers, New York City, for defendants.

J. SKELLY WRIGHT, District Judge.

On December 19, 1960, Thomas Reagan, Jr. was found dead in his bathtub. In these proceedings, his widow is suing for the proceeds of accidental death policies totaling two hundred thousand dollars, together with attorneys' fees and penalty for non-payment. Denying death by accidental means and alleging refusal of plaintiff to submit the body to inspection by them as required by the policies, the insurers move for disinterment and post mortem examination.

The record reveals that, on being taken from the bathtub, decedent was subjected to artificial respiration by Dr. Nicholas Chetta, coroner for the Parish of Orleans, next door neighbor and friend of the plaintiff and her deceased husband. After artificial respiration failed to revive the body, it was taken to the coroner's office, where an autopsy was immediately performed by the coroner's pathologist, Dr. Monroe Samuels. The pathologist's report initially revealed no findings which would indicate accidental death.[1] The body was also examined later the same day, December 19, 1960, by a pathologist retained by the plaintiff, Dr. Charles Dunlap, who apparently was also unable to find any indication of death by accidental means.

Nevertheless, some time later, on January 12, 1961, the coroner issued his report and found that the death was "Accidental: Due to bone marrow and fat embolism to lungs." It appears that the coroner, Dr. Chetta, in examining the microscopic slides prepared from tissues of the organs of the assured by Dr. Samuels at autopsy, found evidence of "bone marrow and fat embolism" in certain

Lemle & Kelleher, Harry B. Kelleher, Murphy Moss, New Orleans, La., for plaintiff.

1. Dr. Samuels' report included seven findings:

"1. Laryngeal edema.

2. Fibrous myocardial scar at apex of left ventricle.

3. Fatty liver.

4. Chronic cholecystitis and cholelithiasis.

5. Congenital absence of left kidney.

6. Diverticuli of colon.

7. Fibrous adhesions over left lung."

Later, when the coroner's report was filed, the following eighth finding was added:

"8. Bone marrow and fat embolism to lungs."

sections of the lungs and lung arteries of the assured. From this he concluded that the assured must have fractured one or more bones in his body, causing the release of bone marrow and fat to the lungs. This finding of accidental death was made in spite of the fact that no fractures were revealed in autopsy or in the examination of the body made by the plaintiff's private pathologist.

The insurers assert that the pathological findings made at autopsy, particularly the first three, account for the death of the assured. They realize, however, that they will be required to overcome the official finding of the coroner that the death was due to accidental means. The insurers have moved, therefore, for exhumation, suggesting that the interests of justice require that the coroner's thesis of accidental death be proved or disproved and that the only way to obtain the required proof is to examine the body to determine whether or not there are fractures. The insurers suggest that the accidental death finding is an afterthought of which neither the coroner, the coroner's pathologist, nor the private pathologist retained by the plaintiff was aware at the time they examined the body.

In support of their position the insurers have filed affidavits from eminent authorities indicating that only by exhumation and examination can the cause of death here be definitively determined. They point to a provision in the policies which gives them the right to a post mortem examination and which plainly provides further that "no surgical examination of the body of the Assured shall be made at the instance of his representative without due notice having been first given to Underwriters, so as to enable Underwriters to have their medical officers present at the same time."[2] In this connection, the insurers suggest that, although plaintiff's private pathologist made a surgical examination of the body of the assured before interment, no similar opportunity has been afforded them, either at that time or subsequently.

The plaintiff, being satisfied with the evidence as it now stands, opposes exhumation. She concedes that under some circumstances exhumation may be ordered, but suggests that in this case the application therefor comes too late and that, in any event, further examination of the body would prove nothing since she is advised by her experts, including the coroner, that even if no fractures are disclosed, the finding of accidental death would remain undisturbed.

 It is true, as plaintiff suggests, that exhumation is not favored in the law[3] and that only on a showing of good cause will it be ordered. Respect for the body of the dead is part of our culture

2. The entire provision reads:

"1. Notice of Loss: Notice in writing must be sent to Underwriters or Swett & Crawford, 914 Carondelet Bldg., New Orleans, Louisiana, of any accident to the Assured as soon as reasonably practicable after the occurrence of the accident, and the Assured must as early as possible place himself under the care of a duly qualified medical practitioner. In the event of death, immediate notice must be sent to Underwriters or Swett & Crawford. In no case will Underwriters be liable to make compensation to the Assured or to his representatives unless the medical, or other officers of Underwriters appointed by them for the purpose shall be allowed to make any medical or surgical examination of the person of the Assured on the occasion of any alleged injury within the meaning of this Certificate, and so often as the same may be required on behalf of the Underwriters, and in the event of death to make any post-mortem examination of the body of the Assured as Underwriters are advised necessary for the purpose of ascertaining the extent of the alleged injuries and disablement, or the true cause of death, and no surgical examination of the body of the Assured shall be made at the instance of his representative without due notice having been first given to Underwriters, so as to enable Underwriters to have their medical officers present at the same time."

3. Travelers Ins. Co. v. Welch, 5 Cir., 82 F.2d 799; Choppin v. Labranche, 48 La. Ann. 1217, 20 So. 681, 33 L.R.A. 135; see 1 Harper and James, Torts, § 9.4.

which militates against granting motions of this kind. Nevertheless, where the interests of justice appear to require it, exhumation should be ordered. If, through no fault of its own, an insurer has been denied the right to produce and present its proof, and exhumation is the only means presently available, the exhumation must be ordered, in spite of the mental anguish that such action may bring to bereaved survivors.[4]

Here the record shows that the assured died December 19, 1960. An autopsy was performed the same day by Dr. Samuels, the coroner's pathologist. There was an examination of the body by Dr. Dunlap, plaintiff's pathologist. This examination was made at the funeral home and was effected by reopening the body. The deceased was buried December 21, 1960. The microscopic examination of the tissue slides made at autopsy followed several days later, culminating in the coroner's finding of accidental death in the coroner's report dated January 12, 1961. On January 19, 1961, plaintiff requested claim forms, and on February 3, 1961, claim for the proceeds of the policies was filed.

■ On December 20, 1960, the local independent agency [5] which sold the policies in suit learned of the death of the assured from the newspaper, and on December 22, 1960, informed Underwriters' agent of the possibility of an accidental death claim. On January 20, 1961, the defendants' investigators received the coroner's report, and from that day until April 6, 1961, the insurers were interviewing experts and preparing the documentary submissions which were made in connection with this motion. When that preparation was complete on

April 6th, a request for consent to exhumation was made of the plaintiff and was denied.

■ It is on this chronology that the plaintiff argues that the request for exhumation has been unreasonably delayed. Plaintiff makes no effort to explain why, in accordance with the provision of the policies, the insurers were not given an opportunity to examine the body at the time her own private pathologist made his examination or at any other time prior to burial. Plaintiff, through her counsel who was active in the case at this stage, knew that a claim on the accidental death policies might be made. She sought evidence to support that claim through her private pathologist. Additional support came from the fortuitous finding of accidental death by the coroner, Dr. Chetta. Yet at no time until long after the assured was buried did plaintiff advise the insurers that a claim on the accidental death policies was even contemplated. The fact that the insurers worked some two months, after receiving notice of the claim, obtaining evidence to support their motion for exhumation is not surprising. At least that much time was required to meet the evidence already amassed by plaintiff under more favorable conditions.

The two Fifth Circuit opinions cited by the plaintiff in support of her position are inapposite.[6] Those cases did not involve a motion for exhumation. They denied, in the circumstances of those cases, the right of the insurer to forfeit the policies because of failure to make the body of the assured available to the insurer for autopsy. Actually, the court, in Welch, indicated that the procedure here invoked by the insurers was prefer-

---

4. See McCulloch v. Mutual Life Ins. Co. of New York, 4 Cir., 109 F.2d 866, and state courts cases cited on page 869; 3 Appleman, Insurance Law and Practice, § 1504.

5. Plaintiff argues that notice to the local agency was notice to insurers and that insurers should have moved before the body was buried the following day. Assuming, but not suggesting, insurers

would be required to move in that time, they would have been entirely satisfied with what they found in the pathologist's report on autopsy. As shown, the accidental death finding, and the basis therefor, was not disclosed until some time later.

6. Order of United Commercial Travelers of America v. Moore, 5 Cir., 134 F.2d 558; Travelers Ins. Co. v. Welch, supra.

able to forfeiting the policy for non-compliance with insurer's right to examine the body.[7]

It is not easy for a court to order exhumation over the objection of the widow. The court cannot be insensible to the travail which inevitably will result. But her insurers have a right under their contract to examine the body and, particularly under the circumstances of this case, this right should be enforced. The election as to whether the body will be disinterred in these circumstances is one which the plaintiff must make.

Motion to disinter and examine granted.

---

**7.** "Specific enforcement of the right is more logical than forfeiture. A fair interpretation of it is that the insurer shall be permitted by the consent of those entitled to give consent to have such autop- sy, or if they will not consent, to appeal to a court to decide on the propriety of it." Travelers Ins. Co. v. Welch, supra, 82 F.2d at page 802.