CONERY, J.,
dissents and assigns reasons.
Lin this highly unusual suit against an attorney and a funeral home for allegedly improperly orchestrating an exhumation of the body of plaintiffs daughter for an autopsy, the majority affirms the trial judge’s grant of an Exception of No Cause of Action against the attorney. The attorney obtained an Ex Parte Order for the Exhumation by misleading the trial judge into believing that the coroner had approved the exhumation request. The majority also reverses the trial judge’s denial of the defendant attorney’s Motion to Strike the allegations against him and awards attorney’s fees against plaintiff, Mr. Jeansonne. The majority further affirms a summary judgment in favor of the funeral home, whose employees actually had the remains disinterred, brought the remains to a hospital for an autopsy, and then reinterred the remains, all allegedly without the permission of the owner of the cemetery or the coroner and without notice to the plaintiff, who had paid for the funeral services, the casket, the crypt and the burial of his eighteen year old daughter, Morgan. For the following reasons, I dissent.

Exception of No Cause of Action

In this case, a grieving mother, Sharleen Jeansonne, sought to exhume the body of her daughter, Morgan Jeansonne, whose self-inflicted fatal gunshot wound | ¡>had been ruled a suicide by the coroner. At the time, Morgan was eighteen and had been living with her father for some time. At some point, Mrs. Jeansonne began to suspect for some unknown reason not contained in the record that her ex-husband murdered their daughter. She wanted to exhume Morgan’s body for an autopsy. After the coroner denied Mrs. Jeansonne’s request to exhume the body, she hired Mr. Roy, who obtained an Ex Parte Court Order to exhume the body for purposes of autopsy without notifying the coroner or due process notice to the equally grieving former husband and father, plaintiff, Chet Jeansonne.
Mr. Jeansonne sued Mr. Roy for intentional infliction of emotional distress, claiming that Mr. Roy filed an Ex Parte “Motion to Exhume and/or For the Disinterment of Remains for Autopsy Purposes Pursuant to La.R.S. 8:660” with an attached Order. The Order is in the record, but not the Motion. The trial court granted an exception of no cause of action, but allowed the plaintiff to amend his suit. He *144 did and the trial court dismissed the law-, suit against the attorney finding no facts had been alleged that would support a finding that Mr. Roy intentionally took action that he knew would cause direct harm to Mr. Jeansonne.
The majority affirmed and correctly summarizes much of the pertinent law applicable to this case. Some additional observations are in order to better illuminate the issues discussed in dissent.

Exhumation of Body

It is especially important to recognize that this case must be decided in light of long standing precedent that “exhumation of a body is not favored in the law and’ is against public policy, except in cases of necessity for laudable purposes.” Spiess v. Greenwood Develop. Co. Inc., 542 So.2d 810 (La.App. 3 Cir.1989). These exact words date back to the seminal supreme court case of Choppin v. Labranche, 48 La.Ann. 1217, 20 So. 681 (1896), which stated:
The disturbance of the remains of the dead, except for lawful necessary purposes, is not encouraged. With due regard to the sentiment on that subject, as well as public policy, courts have enjoined disinterments ... To disturb the mortal remains of those endeared to us in life sometimes becomes the sad duty of the living. But, except in cases of necessity, or for laudable purposes, the sanctity of the grave should be maintained.
As Justice Cardozo stated in Yome v. Gorman, 242 N.Y. 395, 403, 152 N.E. 126, 129 (1926), “The dead are to rest where they have laid unless reason of substance is brought forward for disturbing their repose.”
In order to disinter remains, La.R.S. 8:659 requires, in pertinent part, the consent of the cemetery authority and written consent of one of the following:
(3) The surviving parents
If the required consent cannot be obtained, a final judgment of the district court of the parish where the cemetery is situated shall be required. The statute obviously contemplates an ordinary proceeding, with notice and due process, not a summary, Ex Parte proceeding.
Louisiana Revised Statutes 8:660 was cited by Mr. Roy in defense of the claim. He argues the exception to La.R.S. 8:559 in La.R.S. 8:660(3) applies, and allows for the disinterment as follows, “(3) The disinterment of remains pursuant to an order of a coürt of competent jurisdiction or of a corner of the parish in which the cemetery is located.” La.R.S. 8:660 (emphasis added). He argues he lawfully obtained a Court Order and had no duty to Mr. Jeansonne, his adversary.
Mr. Roy, as an attorney, knew that there would have been no need for a court order if the coroner had approved Mrs. Jeansonne’s request for exhumation, as the coroner had the authority to order the exhumation under La.R.S. 8:660(3). The coroner had already denied the request. Hence Mr. Roy had to intentionally |4seek an Ex Parte Court Order as he knew both the coroner and Mr. Jeansonne would oppose the request. Mr. Roy knew that his intentional actions would cause direct harm to Mr. Jeansonne and Mr. Jeansonne alleged that the exhumation, autopsy, and disinterment did cause extreme emotional distress to him.
Exception of No Cause of Action — Attorney’s Liability to a non-client adversary for intentional acts.
As the majority correctly sets forth in its opinion, under Louisiana law attorneys may be liable to a non-client adversary if it can be shown there was intent to harm. *145 The lead case on this issue discussed by the majority is Penalber v. Blount, 550 So.2d 577, 582 (La.1989), which states with regard to the allegations of fact contained in the plaintiffs petition in that case:
Instead, it alleges intentional, even calculated, misconduct performed for both Connelly and his client’s benefit, causing direct harm to the adverse litigant. Intentionally tortious actions, ostensibly performed for a client’s benefit, will not shroud an attorney with immunity. Consequently, even though an attorney does not generally owe a duty to his client’s adversary, under the broad ambit of LSA-C.C. art. 2315, an attorney may be held personally accountable for his intentional tortious conduct.
[[Image here]]
The basic difference between an intentional tort and a negligent act is briefly explained in Bazley v. Tortorich, 397 So.2d 475 (La.1981). A more recent treatment of the subject matter is found in Caudle v. Betts, 512 So.2d 389 (La.1987). Numerous authorities and commentaries are cited and the opinion notes:
The intent with which tort liability is concerned is not necessarily a hostile intent, or a desire to do any harm. Restatement (Second) of Torts, American Law Institute § 13, (comment e) (1965). Rather it is intent to bring about a result which will invade the interests of another in a way that the law forbids. The defendant may be liable although ... honestly believing that the act would not injure the plaintiff.... W. Prosser and W. Keeton, The Law of Torts, § 9 (5th ed.1984). (Emphasis added.)
| BThe majority acknowledges Penalber, but quotes Montalvo v. Sondes, 93-2813 (La.5/23/94), 637 So.2d 127, 130, and would require the plaintiff to allege facts that the attorney “intended to cause direct harm” to the non-client by taking the action at issue. Montalvo, however, re-affirmed the supreme court’s earlier holding in Penal-ber. The question then becomes did the petition and amending petition allege sufficient facts from which a reasonable inference could be made of intent to harm by the attorney.
Intent can only be proven by circumstantial evidence. Allegations of the petition must set forth facts, which if proven true at trial, set forth a cause of action in tort under the law. We must consider the petition in a light most favorable to the non-moving party and must consider how the law applies to the issue at hand. The non-moving party is entitled to all reasonable inferences arising from the facts alleged. City of New Orleans v. Bd. Of Comm’rs of Orleans Levee Dist., 93-690 (La.7/5/94), 640 So.2d 237.
From reviewing a copy of the record, the petition and amending petition allege intentional acts by Mr. Roy from which the following reasonable inferences may be made:
1. Morgan Jeansonne, the couple’s youngest daughter, was eighteen at the time of the incident and had been living in Mr. Jeansonne’s home for some time prior to her death.
2. Morgan Jeansonne died as a result of a self-inflicted gunshot wound and the coroner ruled she committed suicide.
3. Mr. Jeansonne arranged for Morgan’s funeral, bought a casket, paid Es-cude Funeral Home for her funeral services, and bought a crypt in the | f,cemetery where Escude completed the burial. Morgan’s remains were interred in a mausoleum at St. Paul’s Catholic Church Cemetery in Mansura, Louisiana, in Avoyelles Parish, some eleven miles from Marksville, La. The mausoleum is owned by St. Paul’s Catholic *146 Church and Father Partain was the pastor.
4. Sharleen Jeansonne suspected for some unknown reason unsupported by any evidence in the record that Morgan had been murdered by her father, her ex-husband Chet Jeansonne. She asked the coroner to exhume the body and conduct an autopsy. The coroner refused her request.
5. Mrs. Jeansonne hired Cory Paul Roy, Jr. to assist her in accomplishing the exhumation and autopsy. Mr. Roy has been practicing law since 2000 (according to the public records of the Louisiana State Bar Association) and therefore is an experienced attorney. Notice and Due Process issues are not novel or confusing concepts.
6. Mr. Roy filed a highly unusual Ex Parte Motion and Order to exhume Morgan’s body with the Clerk of Court, and it was randomly allotted to Judge Bennett, who was not immediately available to sign the Order. (Uniform Rules-District Courts, Rule 9.4) The Order is in the record, but the Motion in Support of the Order is not. There is no mention of a memorandum, which should have been attached to the Motion and no affidavit showing exigent circumstances. Uniform Rules — District Courts, Rule 9.9.
7. After the case was allotted to Judge Bennett, Mr. Roy approached Judge Jeansonne in chambers ex parte. There is nothing in the record to support the proposition that Mr. Roy had made an attempt to call or notify [7Mr. Jean-sonne, or any attorney who might have previously represented Mr. Jeansonne, that he was seeking an ex parte order to exhume the body of the couple’s daughter, Morgan Jeansonne. Mr. Roy was obligated under the Uniform Rules-District Courts, Rule 9.8, to contact counsel for Mr. Jeansonne or Mr. Jeansonne personally to explain he was seeking an Ex Parte Order. Mr. Roy then violated the Louisiana Rules of Professional Conduct by misleading the Judges by assuring them that the order was approved by the coroner.[1] He was not candid with the tribunal and, to the contrary, intentionally mislead Judges Bennett and Jeansonne.
8. Mr. Roy is charged with knowing that Uniform Rules-District Courts, Rule 9.8 requires that all Motions must be accompanied by an Order and will not be scheduled until at least fifteen days after filing. The exception to Rule 9.8, is an Ex Parte Motion, which must be (1) unopposed; (2) motions where all parties have been joined; or (3) permitted by law or these Rules to be decided ex parte. None of these exceptions applied to this case.
9. Louisiana Code of Civil Procedure Article 963 specifically allows an Ex Parte Motion to be granted without hearing if the order sought by “written motion is one which the mover is clearly entitled without supporting proof.” If the order is “one to which the mover is not clearly entitled, or which requires supporting proof, the motion shall be served on and tried contradictorily with the adverse party.” (Emphasis added.) As an attorney, Mr. Roy is charged with knowledge of this particular provision of our law.
|s10. Court Orders setting a show cause hearing must be filed with the *147 Clerk of Court, whose personnel normally would present the Order to the allotted Judge or duty Judge for signature. There is no necessity for an attorney to “walk the order through.” From the facts alleged, it can reasonably be inferred that Mr. Roy intended to try to get the Judge to sign an Ex Parte Order granting relief without a hearing. Otherwise he would have simply left the Order with the Clerk for the Judge to set a show cause hearing and would not have included an Ex Parte request in the Order.
11. A request for exhumation is highly unusual and not something to be taken lightly. Louisiana jurisprudence recognizes a long standing public policy against exhuming bodies. Mr. Roy knew that the coroner was the proper party to request an exhumation[2] and should have been notified of the request
12. Since the Motion is not in the record, there is no evidence whatsoever that there were exigent circumstances requiring an Ex Parte Order, and likewise no sworn affidavit in support of any allegations that may have been made.
13. Judge Jeansonne was apparently asked to sign the order ex parte, otherwise, there would have been no need to present the Order to Judge Jeansonne or for Judge Jeansonne to call the allotted Judge Bennet.
14. It can reasonably be inferred that at Mr. Roy’s request, Judge Jeansonne then called Judge Bennett about whether he should sign this highly unusual Ex Parte Order, or set it for show cause hearing. Had a lgshow cause hearing been scheduled, the coroner and Mr. Jeansonne would have been served. Judge Bennett then specifically asked whether the coroner “was in the loop.” Mr. Roy intentionally misled Judges Bennett and Jeansonne, falsely inferring the coroner had approved the request. If the coroner had in fact approved the exhumation request, the coroner had the authority to Order the exhumation under La.R.S. 8:660, and there would have been no necessity for a Court Order.
15. The pleadings and order had no typed service information, circumstantial evidence that Mr. Roy was seeking an Ex Parte Order and did not intend to afford notice and due process before proceeding with the requested exhumation. Mr. Roy hand wrote service information on the order after it was signed. The order was filed with the Clerk with no request for expedited service. The Order was presented on Friday and the autopsy was done the same day. The body was re-interred Saturday, and Mr. Jeansonne wasn’t served until Monday, too late to object.
16. The Order was extremely vague and stated that the “appropriate authority” was to exhume the body. Sharleen Jeansonne personally hand carried a copy of the order to Escude Funeral Home, even though Escude had not been named as the “appropriate authority” in the Ex Parte Order and had not been directed to exhume the body. Mrs. Jeansonne allegedly demanded that the funeral home immediately exhume the body. The funeral director honored her request, even though the Order was not directed to Escude Funeral Home. The Order was vague, at best, because even though the funeral home may be an “appropriate authority” to actually carry out an Exhumation Order, the coroner is the “appropriate authority” to | inauthorize exhumation. La. R.S. arts. 13:5713(B)(2) and 8:660(3).
*148 17. Ira Escude signed an affidavit in support of Escude’s Motion for Summary Judgment wherein he stated that he had over thirty years of experience as a funeral director. Mr. Escude knew Mr. Jeansonne and knew that Mr. Jean-sonne paid for the funeral services, the casket and the crypt in which Morgan was buried, yet he made no attempt to notify Mr. Jeansonne before carrying out this vague Order on a Friday. It can reasonably be inferred and concluded that Escude’s obligation was to its’ client, Mr. Jeansonne, and to the sanctity of the final resting place of Morgan.
18. A crew working for Escude Funeral Home was somehow immediately able to accompany Mrs. Jeansonne and Mr. Escude to the grave site eleven miles away in Mansura. Escude had a transport vehicle immediately available to bring the remains to a hospital in Alexandria, Rapides Regional Medical Center, some thirty-three miles from Man-sura.
19. Somehow personnel at Rapides Regional Medical Center were immediately available to receive the body and arrange for a room and the necessary equipment for the autopsy to be performed. The physician who did the autopsy was also immediately available to perform the autopsy at the hospital. Individuals employed by Escude were then available to return Morgan’s body to the funeral home where it was kept overnight, and then re-inter the body the next day on Saturday.
20. St. Paul’s Catholic Church was the owner of the cemetery. Mr. Ira Escude stated in his affidavit in support of Es-cude’s summary judgment motion that the priest in charge of the cemetery had been contacted and had approved of the request to open the tomb and remove the body. Father InPartain, pastor at St. Paul’s Church, signed a countervailing affidavit introduced at the plaintiffs Motion for New Trial hearing that he was the person responsible for the cemetery and that no one had contacted him or notified him of this highly unusual request.
How does one prove intent? Intent can only be proved by circumstantial evidence. In this case, reasonable inferences from the allegations of the petition and the record support a finding that Mr. Roy actively and intentionally helped his client orchestrate this whole scenario, and was able to accomplish it by intentionally misleading the Judges to improperly grant an Ex Parte Order.
Mr. Roy’s actions clearly establish that he intentionally obtained the Ex Parte Order of Exhumation knowing full well that his actions would result in substantial injury to Mr. Jeansonne’s psyche and would cause him extreme emotional distress.
Counsel for Mr. Roy has raised the question of whether Mr. Roy had the specific intent to directly harm Mr. Jeansonne or intentionally inflict mental anguish on him? This is a tort case filed under La.Civ.Code art 2315, not a criminal proceeding. Mr. Roy clearly had the specific intent to take the actions that he took, and he clearly knew that his actions would result in serious emotional suffering by Mr. Jeansonne. If he had thought otherwise, he would have acted differently and simply filed a show cause Order with notice and due process safeguards. Nicholas v. Allstate Ins. Co., 99-2522 (La.8/31/00), 765 So.2d 1017, Penalber v. Blount, 550 So.2d 577 (La.1989), Miller v. Mier, 04-992 (La.App. 3 Cir. 11/10/04), 887 So.2d 157 (unpublished opinion). The facts in Penal-ber and its holding are directly on point in this case.
Through alleged contrivance and subterfuge, Morgan’s final resting place |12has *149 been disturbed and her body desecrated, allegedly resulting in extreme emotional distress to her father, plaintiff, Chet Jean-sonne. A cause of action has been stated. I would reverse the trial court’s grant of the Exception of No Cause of Action and remand for further proceedings.

Summary Judgment

For the same reasons outlined in the discussion under no cause of action, Summary Judgment in favor of Escude was improper and pre-mature. Discovery had not yet begun. Already numerous factual issues and inferences from those facts have been raised in connection with the strange and unusual set of circumstances leading to the immediate exhumation, autopsy and re-interment of Morgan’s remains.
Mr. Ira Escude’s statement of facts in his sworn affidavit that the owner of the cemetery had approved of the exhumation request was directly contradicted by Father Partain. Mr. Escude’s statement to Mr. Jeansonne, as set forth in Mr. Jean-sonne’s affidavit introduced at the summary judgment proceeding, that Mr. Es-cude was pressured into co-operating with Sharleen Jeansonne and that she had threatened Escude with a lawsuit if he did not co-operate and exhume the body raises more questions as to Escude’s role than it answers. Escude’s duty was to its client, Mr. Jeansonne, and to preserving the integrity of Morgan’s remains. A reasonable inference can be made that Escude appeared only too willing to help Mrs. Jeansonne. Future discovery may show the extent of Escude’s active involvement. Too many coincidences usually mean that someone is being untruthful. Credibility decisions cannot be made on summary judgment.
Especially in light of Louisiana’s strong public policy against exhumation, Mr. Jeansonne deserves his day in Court. I would reverse the Summary Judgment 11Rand the Motion to Deny the new trial on this issue. At the very least, summary judgment is premature, as no discovery has yet taken place and “the law does require that the parties be given a fair opportunity to present their case.” Simon v. Belaire, 11-442, p. 3 (La.App. 3 Cir 10/5/11) 74 So.3d 1250, 1252, writ denied, 11-2454 (La.2/3/12), 79 So.3d 1027.

Motion to Strike

The majority reverses the trial court’s denial of Mr. Roy’s motion to strike and found that La.Civ.Code art. 971 did apply to Mr. Roy under the circumstances of this case, and he was entitled to attorney’s fees. I disagree with the majority on this issue. By reversing the trial court’s grant of the exception of no cause of action against the defendant attorney Mr. Roy, Roy’s Motion to Strike and request for attorney’s fees must be denied.
CONCLUSION
I dissent and would reverse the Exception of No Cause of Action filed by Mr. Roy and remand for further proceedings on this issue. Mr. Jeansonne has stated a cause of action against Mr. Roy. I would affirm the trial court’s denial of Mr. Roy’s Motion to Strike and deny his request for attorney’s fees.
Material issues of fact exist as to the knowledge and participation of the funeral home personnel, Mr. Roy and Mrs. Shar-leen Jeansonne. I would reverse the trial judge’s grant of Summary Judgment in favor of Escude and reverse the denial of plaintiffs new trial motion at this juncture. No discovery has been undertaken. Louisiana’s strong public policy against exhumation is on Mr. Jeansonne’s side. Summary Judgment is premature.
I would assess all costs of this appeal against Mr. Roy and Escude.

. Louisiana Rules of Professional Conduct, Rule 3.3(A)(1) Candor Toward the Tribunal— "A lawyer shall not knowingly ... make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer".

. La.R.S. 13:5713; La.R.S. 8:660(3).